# FILED

**October 28, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT NASHVILLE**

_____

| | | |
|---|---|---|
| **KIMBERLY LYNN (FOLEY) CAUDILL,** | ) | Williamson County Chancery Court |
| | ) | No. 23856 |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | No. 01A01-9903-CH-00187 |
| | ) | |
| **WILLIAM HOWARD FOLEY**, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

_____

From the Chancery Court of Williamson County at Franklin
**Honorable Russ Heldman, Chancellor**

**John D. Kitch**, Nashville, Tennessee
Attorney for Plaintiff/Appellant.

**Edward P. Silva**,
HARTZOG, SILVA & DAVIES, Franklin, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**


**HIGHERS, J.**: (Concurs)

**KOCH, J.**: (Concurs)


In this dispute between Kimberly Lynn Foley ("Mother") and William Howard Foley (" Father"), the trial court denied the Mother's petition to relocate with the parties' minor child, removed the child from the parties' joint custody, and placed the child in the sole custody of the Father. For the reasons set forth below, the rulings of the trial court with respect to relocation and child custody are reversed and the cause is remanded for the setting of the Father's new visitation schedule.


*Factual and Procedural History*


At the time of the parties' divorce in 1996, their daughter Heather was five years old. Pursuant to the parties' marital dissolution agreement, the divorce court placed Heather in the parties' joint custody, designating that the Mother would be the primary custodial parent and that the Father would have liberal and reasonable visitation.[1] The parties initially were very cooperative and worked well together regarding the raising of their daughter. The parties' relationship became strained, however, after the Father became engaged in October of 1996 and later married Dr. Nina Foley. Further friction developed between the parties when, in August of 1998, the Mother sent a letter to the Father informing him that she intended to relocate with Heather to Freeport, Florida and offering to work out a new visitation schedule. Thereafter in September of 1998, the Mother married Craig Caudill, who owns a

millwork company in Freeport, Florida.

The Mother subsequently filed a petition seeking permission to relocate with Heather. The Father then filed a response asking that the petition be denied or, in the alternative, that he be awarded primary physical custody of Heather with visitation to the Mother. After a hearing on the matter, the trial judge ruled from the bench that section 36-6-108 of the Tennessee Code Annotated was unconstitutional, denied the Mother's petition to relocate, and placed Heather in the sole custody of the Father. The Mother subsequently filed a motion for new trial, arguing that the Attorney General and Reporter had not been given notice that the constitutionality of section 36-6-108 had been called into question and that the pleadings did not include a request by the Father for a change of custody. The Mother later filed an amended motion for new trial and a motion to recuse, noting that the trial judge had previously participated as an attorney in a case with similar issues. The trial court subsequently entered an order giving notice to the Attorney General and Reporter that it had declared section 36-6-108 to be unconstitutional and offering the Attorney General and Reporter and opportunity to be heard on the matter. The trial court then entered an order granting a new trial with respect to the constitutionality of section 36-6-108 and denying the Mother's motion to recuse. Finally, after considering a motion to amend and supporting memorandum filed by the Attorney General and Reporter, the trial court issued a memorandum opinion and final order declaring subsections (c), (d), and (e) of section 36-6-108 to be unconstitutional as applied to the facts of the case and reinstating its prior order placing Heather in the sole custody of the Father with visitation to the Mother. This appeal followed.

### *Issues and Standard of Review*

The issues on appeal, as we perceive them, are as follows:

1. Did the trial judge err in declaring section 36-6-108 of the Tennessee

Code Annotated unconstitutional?

2. Did the trial judge err in denying the Mother's petition to relocate with the parties' minor child?

3. Did the trial judge err in removing the child from the parties' joint custody and placing her in the sole custody of the Father?

4. Did the trial judge err in refusing to recuse himself?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

## *Mother's Relocation*

Parental relocation in child custody cases is governed by section 36-6-108 of the Tennessee Code Annotated. *See* Tenn. Code Ann. § 36-6-108 (Supp. 1998). The trial court, on its own motion, called into question the constitutionality of section 36-6-108, ultimately ruling that this provision is unconstitutional as applied to the facts of the case at bar. Specifically, the trial court found (1) that the retroactive application of this provision would violate Article I, Section 20 of the Tennessee Constitution, (2) that subsections (c), (d), and (e)[2] of this provision violate the separation of powers doctrine contained in Article II, Sections 1 and 2 and Article VI, Section 1 of the Tennessee Constitution, and (3) that subsections (c) and (d) of this provision violate the equal protection clause contained in Article XI, Section 8 of the Tennessee Constitution.

We first address whether Article I, Section 20 of the Tennessee Constitution prohibits the retrospective application of section 36-6-108. Article I, Section 20 provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. I, § 20. The term "retrospective laws" has been defined as "those which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978). Article I, Section 20 thus prohibits the retrospective application of laws that impair the obligation of contracts or divest or impair vested rights. *See Dark Tobacco Growers' Co-op. Ass'n v. Dunn*, 266 S.W. 308, 311 (Tenn. 1924). This provision generally does not, however, prohibit the retrospective application of laws that are remedial in nature. *See Doe v. Sundquist*, 943 F. Supp. 886, 893 (M.D. Tenn. 1996), *aff'd*, 106 F.3d 702 (6ᵗʰ Cir. 1997); *and cert. denied*, 522 U.S. 810 (1997); *Kee v. Shelter Ins. Co.*, 852 S.W.2d 226, 228 (Tenn. 1993); *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976); *State Dep't of Human Servs. v. DeFriece*, 937 S.W.2d 954, 957-58 (Tenn. App. 1996); *Morford v. Yong Kyun Cho*, 732 S.W.2d 617, 620 (Tenn. App. 1987).

In the instant case, the parties' marital dissolution agreement states that "Wife shall not remove child's residence from jurisdiction of Court without court approval." The trial court found that, upon entering into an agreement containing this language, the parties were vested with the right to have the existing law of *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996), apply to any subsequent proceeding involving a request by the Mother to relocate with the parties' minor child. The trial court then concluded that, pursuant to Article I, Section 20, this "vested right" may not be divested or impaired by the retrospective application of section 36-6-108. We disagree with the trial court's conclusion. This Court has previously held that section 36-6-108 is remedial in nature and does not impair any vested right. *See Adams v. Adams*, No. 01A01-9711-CV-00626, 1998 WL 721091, at *3 (Tenn. App. Oct. 16, 1998). Thus, its retrospective application is not prohibited by Article I, Section 20. Assuming, however, that Article I, Section 20 is in some way triggered in the case at bar,

we would still find that the retrospective application of section 36-6-108 would not divest or impair the parties' vested rights. Nowhere in the parties' marital dissolution agreement did they agree that the law of *Aaby* would govern any future disputes regarding relocation. Rather, the parties merely agreed that the Mother would not remove Heather from the state of Tennessee without first obtaining approval from the trial court. This requirement is consistent with and is in no way undermined by section 36-6-108, which sets forth a procedure for seeking court approval in cases involving relocation. Thus, because 36-6-108 does not operate to divest or impair the parties' rights under their marital dissolution agreement, we conclude that Article I, Section 20 does not prohibit the retrospective application of this provision to the case at bar.

We next address whether subsections (c), (d), and (e) of section 36-6-108 are unconstitutional under the separation of powers doctrine contained in Article II, Sections 1 and 2 and Article VI, Section 1 of the Tennessee Constitution. Article II, Section 1 provides that "[t]he powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial" while Article II, Section 2 states that "[n]o person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, §§ 1, 2. Article VI, Section 1 vests power in the judicial department as follows:

> The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

Tenn. Const. art. VI, § 1.

Under the doctrine of separation of powers, the three departments of government are " coordinate, independent, coequal and potentially coextensive." *Anderson County Quarterly Court v. Judges of 28th Judicial Circuit*, 579 S.W.2d 875, 877 (Tenn. App. 1978)(citation omitted). Each department is expressly prohibited from encroaching on the powers and functions of the other departments. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 453 (Tenn. 1995); *Richardson v. Young*, 125 S.W. 664, 668 (Tenn. 1910); *State v. Brackett*, 869 S.W.2d 936, 939 (Tenn. Crim. App. 1993). Under the Tennessee Constitution, the legislative department is empowered to make, order, and repeal the laws while the judicial department is empowered to interpret and apply the laws. *See Richardson*, 913 S.W.2d at 453; *Richardson*, 125 S.W. at 668; *Brackett*, 869 S.W.2d at 939. It is therefore improper for the General Assembly to attempt to exercise judicial power by enacting a statute that effectively removes from the judiciary its authority to interpret and apply the laws. The courts of this state have held on numerous occasions that such statutes are unconstitutional and void. *See Northern v. Barnes*, 70 Tenn. 603, 612-13 (1879)(act directing the supreme court to remand cases in which land is decreed for sale and to order the sale of the land by the clerk of the inferior court); *Perkins v. Scales*, 2 Shannon's Cases 235, 240 (1877)(act directing the manner of determining judgments or decrees rendered by the supreme court when the judges are equally divided); *Arrington v. Cotton*, 60 Tenn. 316, 319 (1872)(declaratory act construing statute regarding the payment of school teachers); *Sells v. King*, 58 Tenn. (11 Heisk.) 397, 399 (1872)(act directing the court to order a change of venue under certain circumstances); *Mabry v. Baxter*, 58 Tenn. (11 Heisk.) 682, 691-93 (1872)(act giving defendants a right to sever and a right to a change of venue); *Brown v. Haywood*, 51 Tenn. (4 Heisk.) 357, 363 (1871)(act providing that, upon the filing of affidavits of three " unconditional Union men," the court shall transfer the lawsuit back to the county from which the action was originally removed); *State v. Fleming*, 26 Tenn. (7 Hum.) 152, 153-54 (1846)(resolution providing that all cases pending against defendants charged with tippling shall be dismissed); *Governor v. Porter*, 24 Tenn. (5 Hum.) 165, 167-68 (1844)(act directing that a previous statute shall be construed to require that bonds be issued every year); *Jones' Heirs v. Perry*, 18 Tenn. (10 Yer.) 59,

69-71 (1836)(act authorizing guardian to sell land descended from the parent to pay the debts of the parent).

Subsection (c) of section 36-6-108 provides that, when the parents are spending substantially equal amounts of time with the child and one parent seeks to relocate with the child, the trial court "shall determine whether or not to permit relocation of the child based upon the best interests of the child." Tenn. Code Ann. § 36-6-108(c) (Supp. 1998). Additionally, subsection (d) of section 36-6-108 states that, if the parents are not spending substantially equal amounts of time with the child and the parent spending the greater amount of time with the child seeks to relocate with the child, the trial court shall allow the relocation unless (1) the parent does not have a reasonable purpose for relocating, (2) the relocation would pose a threat of specific and serious harm to the child greater than the threat of harm to the child that would be posed by a change of custody, or (3) the parent's motive is vindictive in that his or her reason for relocating is to defeat or deter the visitation rights of the other parent. *See* Tenn. Code Ann. § 36-6-108(d) (Supp. 1998). Finally, subsection (e) of section 36-6-108 provides that, if any of these three grounds exists, the trial court "shall determine whether or not to permit relocation of the child based on the best interest of the child." Tenn. Code Ann. § 36-6-108(e) (Supp. 1998). This provision further states that, if the trial court finds that relocation is not in the best interests of the child and the parent spending the majority of the time with the child still elects to relocate, the court "shall make a custody determination and shall consider all relevant factors." Tenn. Code Ann. § 36-6-108(e) (Supp. 1998).

In ruling that subsections (c), (d), and (e) violate the separation of powers doctrine, the trial court stated as follows:

> For the Legislature to tell how the courts should now decide
> post-decree custody cases or control decrees within a relocation
> context unconstitutionally crosses the line to be maintained between the

> legislative and judicial branches of government and collides with the
> Tennesse [sic] Supreme Court's "interpretation" and "application" of the
> existing law of controlling custody decrees when relocation is requested
> or opposed.

Contrary to the implication of the trial court, we do not think that the General Assembly invaded the province of the judiciary when it enacted subsections (c), (d), and (e). These provisions do not mandate any particular result in parental relocation cases. Rather, as noted above, section 36-6-108 is remedial in nature. *See Adams*, 1998 WL 721091, at *3. It is within the province of the General Assembly, not the judiciary, to establish and control the remedies that are available to persons seeking judicial relief. *See Pacific E. Corp. v. Harpeth Village Dev. Co.*, 902 S.W.2d 946, 955 (Tenn. App. 1995). Although section 36-6-108 sets forth the law of parental relocation, subsections (c), (d), and (e) leave the ultimate decision within the discretion of the trial court. For example, under subsection (c), the trial court must determine whether relocation is in the best interests of the child. Additionally, under subsection (d), the trial court must determine whether the parent's purpose for relocating is reasonable, whether relocation would pose a serious threat to the child greater than the threat posed by a change of custody, and whether the parent's motive for relocating is vindictive. Finally, under subsection (e), the trial court must make rulings regarding relocation and custody according to the best interests of the child. Thus, we do not think that these provisions remove from the trial court its authority to interpret and apply the law of parental relocation. We therefore conclude that subsections (c), (d), and (e) do not violate the separation of powers doctrine contained in Article II, Sections 1 and 2 and Article VI, Section 1 of the Tennessee Constitution.

Finally, we address whether subsections (c) and (d) of section 36-6-108 are unconstitutional under the equal protection clause contained in Article XI, Section 8 of the Tennessee Constitution. Article XI, Section 8 provides that "[t]he Legislature shall have no power . . . to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be

able to bring himself within the provisions of such law." Tenn. Const. art. XI, § 8. This provision guarantees that persons who are similarly situated will be treated alike. *See Evans v. Steelman*, 970 S.W.2d 431, 435 (Tenn. 1998)(citing *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993)). When interpreting Article XI, Section 8, the courts of this state utilize the same framework developed by the United States Supreme Court for analyzing equal protection claims brought under the Fourteen Amendment to the federal constitution. *See id.* (citing *Newton v. Cox*, 878 S.W.2d 105, 109 (Tenn. 1994); *Tennessee Small Sch. Sys.*, 851 S.W.2d at 152-54). Under this framework, a legislative classification is subject to strict scrutiny when it interferes with a fundamental right or operates to the disadvantages of a suspect class of persons. *See id.* (citing *Newton*, 878 S.W.2d at 109). If, however, a legislative classification does not interfere with a fundamental right or adversely affect a suspect class of persons, then the classification is subject to rationale basis scrutiny. *See id.* (citing *Newton*, 878 S.W.2d at 110). Under rational basis scrutiny, a legislative classification will be upheld if a reasonable basis can be found for the classification or if any set of facts may reasonably be conceived to justify it. *See Tennessee Small Sch. Sys.*, 851 S.W.2d at 153 (citing *Harrison v. Schrader*, 569 S.W.2d 822, 825-26 (Tenn. 1978)).

Subsections (c) and (d) classify parents according to the amount of time spent with their child, providing a preference in relocation cases to the parent spending a greater amount of time with the child. *See* Tenn. Code Ann. § 36-6-108(c), (d) (Supp. 1998). This classification does not disturb a fundamental right or adversely affect a suspect class of persons. Thus, we must uphold the classification so long as there is a reasonable basis for it. In *Evans v. Steelman*, 970 S.W.2d 431 (Tenn. 1998), the Tennessee Supreme Court found that "the State's interest in preserving the integrity of the family" was a reasonable basis for a statute that effectively prohibited a biological father from legitimating his child if the child's mother was married to another man at the time of the child's birth. *Id.* at 435. In *Cline v. Drew*, 735 S.W.2d 232 (Tenn. App. 1987), this Court upheld a similar legitimization statute, noting that the state has an interest in "preserving and protecting the integrity of the family unit" and in "protecting the

best interests of the child." **Id.** at 239. Likewise, we think that the state's interest in protecting the best interests of the child[3] is a reasonable basis for the legislative classification contained in subsections (c) and (d) and the preference that these provisions give to the parent spending the greater amount of time with the child. We therefore conclude that subsections (c) and (d) do not violate the equal protection clause contained in Article XI, Section 8.

Having concluded that section 36-6-108 is constitutional as applied to the case at bar, we must now determined whether, applying the law of section 36-6-108, the trial court erred in denying the Mother's petition to relocate. There is no dispute that, although the parties shared joint custody of Heather, the Mother is the parent spending a greater amount of time with the child. Section 36-6-108(d), which applies to situations in which the parents do not actually spend substantially equal intervals of time with the child, provides in pertinent part as follows:

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
> (1) The relocation does not have a reasonable purpose;
> (2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or
> (3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d) (Supp. 1998).

The Mother stated three reasons for relocating, including (1) that her new husband Mr. Caudill resides and owns a successful business in Freeport, Florida, (2) that she has an excellent chance for re-employment with her former employer in Freeport, and (3) that Heather has many friends and relatives that live in the areas surrounding Freeport. Each of these purported reasons constitutes a reasonable purpose for relocation. Additionally, there is no allegation that the Mother's relocation with

Heather would pose a threat of specific and serious harm to the child. With respect to the question of vindictiveness, however, the trial court stated as follows:

> And from considering all of the evidence, I have to point out that I was -- I have to admit that I was impressed with the new Mrs. Foley, that she was not -- she didn't come across as the kind of person that Mrs. Caudill claimed. Mrs. Caudill, you seem to want to attack her for several reasons and that you testified concerning your concerns about her alcoholism, about her speeding and about her being an abusive mother. And you have a right to say those things. But as I considered all of the proof, I have concluded that she's not that kind of person. And that the fact that you exercise your right to claim those things and failed raises in the Court's mind the issues of vindictiveness in this matter.
>
> Plus, you were very candid with the court in cross-examination concerning your feelings toward Dr. Foley and you have a right to say those things. And I listened and I watched you. And I watched how you acted from the witness stand. And I can do nothing but conclude that your motives are vindictive and that your motives are intended to defeat or deter the visitation rights of Mr. Foley. I have come to that conclusion based upon what you said and based upon watching you.
>
> Now that being the case, I looked at other things such as the suggestion that if you did move that his visitation days would have to be cut back. That was very troubling when that evidence came into the record. That supports the Court's finding of vindictiveness. There were other things that came into the record and I considered Dr. Foley's testimony and concerning what she's done to try to rehabilitate herself and I just don't see how the Court can fault her at this point as being a member of a household that is inappropriate for this child.
>
> Therefore, the Court is going to deny the petition to remove the child by Mrs. Caudill.

The trial court's finding of vindictiveness appears to have been based solely on its conclusion that the Mother dislikes the Father's new wife. Under section 36-6-108(d), however, the parent's motive for relocating is vindictive if it is intended to defeat or deter the visitation rights of the other parent. *See* Tenn. Code Ann. § 36-6-108(d) (Supp. 1998). There is no evidence in the record suggesting the Mother has any desire to defeat or deter the Father's visitation with Heather. On the contrary, in a letter informing the Father of her intention to relocate, the Mother included a revised visitation schedule

allowing the Father to spend substantially the same number of days per year with Heather and offered to meet the Father at a location which is approximately half way between their residences to facilitate the Father's visitation. The Mother also testified that, if the Father was visiting his parents in Pensacola, Florida, she would drive Heather to Pensacola for visitation. The Mother further stated that, although she has some reservations regarding the Father's new wife, she would "bend over backwards" and "do anything it takes" to ensure that Heather maintains a good relationship with the Father and his new wife. Based on this testimony and a lack of testimony to the contrary, we conclude that the trial court's finding of vindictiveness is contrary to the preponderance of the evidence. Accordingly, we reverse the trial court's denial of the Mother's petition to relocate with Heather to Freeport, Florida.

### *Change of Custody*

In addition to denying the Mother's petition to relocate, the trial court also removed Heather from the parties' joint custody and placed her in the sole custody of the Father. When considering a non-custodial parent's request for a change of custody, the court must first determine whether there has been a material change in circumstances arising subsequent to the initial decree awarding custody such that the welfare of the child demands a redetermination of custody. *See, e.g., Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. App. 1995)(citing *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. App. 1981)). If there has been a material change in circumstances, the court must then determine whether a change of custody is in the best interests of the child. *See, e.g., Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. App. 1996)(quoting *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993)); Tenn. Code Ann. § 36-6-106 (Supp. 1998). If, however, there has not been a material change in circumstances, the court is not required to make a best interests determination and must deny the request for a change of custody.

In the instant case, the trial court cited the failure of the parties' existing custody

arrangement as a material change in circumstances. In requesting a change of custody, however, the Father did not allege that the parties' joint custody arrangement had become unworkable. Rather, the Father's request for a change of custody appears to have been triggered solely by the Mother's intention to relocate with the child to Freeport, Florida.[4] At trial, the Father testified that his ex-wife was a good mother, that the Mother had always been agreeable regarding his visitation with Heather, and that his desire was that Heather remain in Tennessee and live with the Mother. The Tennessee Supreme Court has expressly held that the removal of a child from the jurisdiction, in and of itself, may not serve as a material change in circumstances sufficient to justify a change of custody. *See Taylor*, 849 S.W.2d at 332. We thus conclude that the trial court's finding of a material change in circumstances is contrary to the preponderance of the evidence. Consequently, we reverse the portion of the trial court's ruling granting a change of custody to the Father.

### *Recusal of Trial Judge*

As stated above, the Mother filed a post-judgment motion asking the trial judge to recuse himself based on his participation as an attorney in *Smith v. Kelley*, No. 01A01-9711-CH-00657, 1998 WL 743731 (Tenn. App. Oct. 27, 1998), a relocation case issued just days before the trial in the case at bar. In denying the motion, the trial judge stated as follows:

> The fact that before becoming a Judge the undersigned, as a private
> practitioner, represented a parent opposing a child's relocation in a
> domestic action in an appeal made several months before the
> undersigned was sworn in as Circuit Court Judge of the 21st Judicial
> District does not create the appearance of impropriety or partiality to
> require recusal in the instant case. . . . The Opinion in *Smith v. Kelley*
> and its release on October 27, 1998, did not prevent the undersigned

from making a fair and impartial decision in this case, which the undersign [sic] did make. Furthermore, by hearing this case the undersigned Chancellor cannot reasonably be construed to evidence the appearance of partiality or impropriety justifying recusal in response to a post-trial motion by Plaintiff under objective, reasonable person recusal standards. The parties have had the benefit of the "cold neutrality" of a fair and impartial Chancellor.

All litigants are entitled to the "cold neutrality of an impartial court" and have a right to have their cases heard by fair and impartial judges. *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. App. 1998)(quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967); *Chumbley v. People's Bank & Trust Co.*, 57 S.W.2d 787, 788 (Tenn. 1933)). In general, a judge should recuse himself or herself if there is any doubt regarding the judge's ability to preside impartially or if the judge's impartiality can reasonably be questioned. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). Under Canon 3 of the Code of Judicial Conduct, a judge is required to recuse himself or herself when " the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Tenn. R. Sup. Ct. 10, Canon 3(E)(1)(a).

In the case at bar, the Mother does not complain that the trial judge had a personal bias or prejudice toward her or her attorney. Rather, she contends that the trial judge's vigorous representation of a father opposing parental relocation in a prior lawsuit gives the appearance of bias or partiality with respect to the subject matter of relocation. As explained below, however, this type of bias or prejudice does not trigger a judge's duty to recuse:

Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are

what constitute disqualifying bias or prejudice.  For example, where a judge stated that he "could not stand" a certain law enforcement officer and would not accept cases initiated by him, it was found that his personal feelings and intense dislike of the officer were improper.  However, neither bias nor prejudice refer to the attitude that a judge may hold about the subject matter of a lawsuit.  That a judge has a general opinion about a legal or social matter that relates to the case before him or her does not disqualify the judge from presiding over the case.  Despite earlier fictions to the contrary, it is now understood that judges are not without opinions when they hear and decide cases.  Judges do have values, which cannot be magically shed when they take the bench.  The fact that a judge may have publicly expressed views about a particular matter prior to its arising in court should not automatically amount to the sort of bias or prejudice that requires recusal.

Jeffrey M. Shaman et al., Judicial Conduct and Ethics § 4.04, at 101-02 (2d ed. 1995)(footnotes omitted).  It must also be remembered that an attorney may not necessarily agree with an opinion expressed or a position advocated on behalf of his or her client.  Thus, the fact that the trial judge once represented a client opposing relocation does not in any way reveal the trial judge's personal beliefs regarding the subject of relocation.  Nor can we find in the record any comments made by the trial judge that indicate his personal beliefs regarding relocation.  We are also mindful that, as a practical matter, the rule suggested by the Mother would be unworkable.  If, in fact, participation as an attorney in a prior lawsuit concerning the same subject matter triggers the need for recusal, then nearly every judge would be required to recuse himself or herself in nearly every case.  We are unwilling to recognize a rule that would lead to such a result.

Requests for recusal are left primarily to the sound discretion of the court. *See Hines*, 919 S.W.2d at 578; *Kinard*, 986 S.W.2d at 228; *Young v. Young*, 971 S.W.2d 386, 390 (Tenn. App. 1997); *Ellison v. Alley*, 902 S.W.2d 415, 418 (Tenn. App. 1995). We will not interfere with a court's decision regarding recusal unless it is clear that the court has abused its discretion. *See Hines*, 919 S.W.2d at 578; *Young*, 971 S.W.2d at 390. Under the circumstances of the instant case, we do not think that the refusal of the trial judge to recuse himself was an abuse of discretion. Thus, with respect to the issue of recusal, the ruling of the trial judge is affirmed.

### *Conclusion*

Based on the foregoing, we affirm in part, reverse in part, and remand the cause with instructions that the trial court enter an order revising the Father's visitation schedule to take into account the Mother's expected relocation to Freeport, Florida. The costs of this appeal are taxed to the Father, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J.

_____
KOCH, J.