IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2003 Session

**BETH A. COLLINS v. JAMES B. COODE, III**

**Appeal from the Chancery Court for Montgomery County**
**No. 2001-10-0064     Michael R. Jones, Judge**

---

**No. M2002-02557-COA-R3-CV - Filed April 27, 2004**

---

This appeal involves a dispute regarding the post-divorce move by a primary residential parent from Clarksville to Knoxville. Upon receiving notice of the planned move, the non-residential parent petitioned the Chancery Court for Montgomery County to prevent the move or to change custody. The trial court conducted a bench trial and denied the petition. On this appeal, the non-residential parent asserts that the court applied the wrong relocation standards because it mistakenly concluded that the parents had not been spending substantially equal amounts of time with their children. We conclude that the record supports the trial court's conclusion that the parents had not spent substantially equal time with the children, and therefore, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, James B. Coode, III.

Carrie W. Gasaway, Clarksville, Tennessee, for the appellee, Beth A. Collins.

**OPINION**

**I.**

James B. Coode, III and Beth A. Coode[1] were married for approximately fifteen years. They lived in Clarksville during the marriage where they had three children.[2] On January 18, 2002, they were divorced in the Chancery Court for Montgomery County on the ground of irreconcilable differences. Their permanent parenting plan provided that Ms. Coode would be the primary

---

[1]Ms. Coode has since remarried, and her surname is now Collins. For clarity's sake, we will refer to her in this opinion as Ms. Coode.

[2]Their oldest daughter was born in October 1987. Their two sons were born in October 1989 and November 1992 respectively.

residential parent and that Mr. Coode would have residential time with the children every other weekend from Friday night until Sunday night and every week from Monday night until Wednesday morning.[3] The plan also allowed Mr. Coode to have the children for his birthday, for the first part of Christmas break,[4] and for four weeks of vacation time to be exercised at any time in the year.

On June 11, 2002, approximately five months after the entry of the divorce decree, Ms. Coode accepted an unsolicited promotion that required her to move from Clarksville to Knoxville. The promotion carried with it a $15,000 increase in her annual salary. Accordingly, she notified Mr. Coode of her intent to move to Knoxville with the parties' three children. Mr. Coode responded on June 13, 2002, by filing a petition in the Chancery Court for Montgomery County seeking to prevent Ms. Coode from moving the children to Knoxville.

Tennessee's parental relocation statute [Tenn. Code Ann. § 36-6-108 (2001)] contains different decision-making standards depending on the amount of time each parent spends with the children. Mr. Coode testified at trial that the three children spent substantially the same amount of time with each parent. However, Ms. Coode testified that Mr. Coode had not exercised all of his residential opportunities with the children. She also asserted that Mr. Coode had already missed between twenty and thirty residential days between the date of the divorce decree and the date of the hearing. The trial court determined that the parties had not spent substantially equal amounts of time with the children and denied Mr. Coode's petition. On this appeal, Mr. Coode asserts that the trial court's factual determination regarding the amount of time each parent spent with the children is flawed.

## II.
### THE PARENTAL RELOCATION STATUTE

One of the most common post-divorce flashpoints occurs when the primary residential parent decides to move with his or her child or children to another city or state. The farther the move, the more intense the opposition because of the move's effect on visitation and the ability of the other parent to foster and maintain an appropriate relationship with his or her child or children. In 1998, the Tennessee General Assembly enacted Tenn. Code Ann. § 36-6-108 to provide parents and the courts with a framework for determining whether the move should be permitted.[5]

Tenn. Code Ann. § 36-6-108 embodies a legislatively mandated presumption in favor of a relocating custodial parent who spends substantially more time with the child than the non-custodial parent. *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. Sept. 14, 2001) (No Tenn. R. App. P. 11 application filed); *Caudill v. Foley*, 21 S.W.3d 203, 211 (Tenn. Ct. App. 1999) (the statute creates a preference for parents actually spending a greater amount

---

[3]The parties later agreed to change the weekdays to Tuesday night until Thursday morning, but this change did not alter the amount of residential time allotted to Mr. Coode.

[4]The parties estimate that the time at Christmas amounts to about one week.

[5]Act of April 22, 1998, ch. 910, 1998 Tenn. Pub. Acts 637 became effective on May 7, 1998.

of time with the child). If the parents are actually spending substantially equal amounts of time with the child, Tenn. Code Ann. § 36-6-108(c) requires the courts to determine whether permitting the relocation is in the child's best interests. If, however, a parent's actual time with the child is not substantially equal to the primary residential parent's, Tenn. Code Ann. § 36-6-108(d) requires the courts to permit the primary residential parent to move unless the other parent can prove (1) that the move does not have a reasonable purpose, (2) that the move poses a specific and serious harm that outweighs the harm resulting from a change of custody, or (3) that the primary residential parent's decision to move is vindictive.[6]

Determinations regarding the amount of time the parents are spending with a child are not controlled by the custody and visitation provisions in the decree. *Helton v. Helton*, 2004 WL 63478, at \*7. Rather, they are based on the time each parent "actually" spends with the child. Tenn. Code Ann. § 36-6-108(c), (d). Thus, evidence regarding the amount of time the parents have or are, in fact, spending with a child takes precedence over the custody and visitation arrangements in a decree. This court has consistently declined to approve various "rounding-up" theories proposed by non-residential parents to inflate the amount of time they have spent with their children.[7]

## III.
### THE TIME ACTUALLY SPENT WITH THE CHILDREN

Mr. Coode asserts that the trial court applied the wrong standard when it authorized Ms. Coode and their children to move to Knoxville. Instead of using the more permissive standard in Tenn. Code Ann. § 36-6-108(d), he insists that the trial court should have employed the comparative fitness analysis in Tenn. Code Ann. § 36-6-108(c). We have determined that the trial court properly elected to invoke Tenn. Code Ann. § 36-6-108(d)'s relocation standard.

Determining whether parents are spending substantially equal amounts of time with their children is, in the first instance, the trial court's prerogative. While the amount of time the parents are actually spending and the other relevant circumstances are factual matters that will be reviewed using the standard of review in Tenn. R. App. P. 13(d), a determination regarding whether the time actually being spent is "substantial," is an ultimate factual conclusion that is not entitled to the same deference. Thus, the appellate courts must review a trial court's conclusion regarding the substantial equality of parents' residential time without a presumption of correctness. Meaningful appellate review requires us to make an independent decision regarding whether the residential time is substantially equal.

---

[6]The parent opposing the relocation has the burden of proving one or more of these circumstances, *Elder v. Elder*, 2001 WL 1077961, at \*5, and considerations of the child's best interests do not come into play until at least one of these circumstances is shown to exist. *Helton v. Helton*, No. M2002-02792-COA-R3-CV, 2004 WL 63478, at \*7 (Tenn. Ct. App. Jan. 13, 2004) (No Tenn. R. App. P. 11 application filed).

[7]This court has disapproved proposals to count portions of days as full days, *Helton v. Helton*, 2004 WL 63478, at \*8, or to consider only the child's "waking hours." *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at \*5 (Tenn. Ct. App. Dec. 30, 2003) (No Tenn. R. App. P. 11 application filed).

Tenn. Code Ann. § 36-6-108 does not define the term "substantially equal." However, no special definition is required because the common meaning of the words and the phrase are easily understood. The word "substantially" means "essentially," "to all intents and purposes," or "in regard to everything material." 17 OXFORD ENGLISH DICTIONARY 68 (2d ed. 1989). Thus, the plain meaning of the term "substantially equal" connotes a relationship that is very close to equality – so close that it may be considered equal.

The courts have not provided bright-line rules for determining whether parents are spending "substantially equal" custodial time with their children.[8] As convenient as a bright-line rule might be, we see no need to adopt one because custody decisions, by their very nature, are inherently fact-dependent. Courts must have flexibility to consider the parents as they find them. However, courts called upon to determine whether parents are spending substantially equal amounts of time with their children should consider, among other things: (1) the terms of the applicable custody and visitation orders,[9] (2) the number of days each parent has actually spent with the child or children, (3) whether the parents are using the full amount of residential time provided them, (4) the length of the period during which the comparison of residential time is being made,[10] and (5) the particular exigencies of the parent's circumstances.

When the circumstances permit, courts should use a twelve-month period to determine the amount of time parents are actually spending with their children. Examining the twelve consecutive months immediately preceding the hearing mitigates the skewed statistical results of shorter comparison periods and enables the courts to factor in summer vacations, holidays, and other extended visitation periods that are not evenly distributed throughout the year. However, in cases like this one in which a twelve-month comparison period is not possible or feasible, the courts should use the longest possible period of time.

---

[8] In fact, the prior decisions construing Tenn. Code Ann. § 36-6-108(c)'s use of "substantially equal" are difficult to reconcile. On two occasions, we have held that a 60% - 40% split of custodial time was not substantially equal. *Branham v. Branham*, No. E2003-01253-COA-R3-CV, 2004 WL 716729, at *3 (Tenn. Ct. App. Apr. 2, 2004) (Tenn. R. App. P. 39 petition for rehearing pending); *Connell v. Connell*, No. E1998-00731-COA-R3-CV, 2000 WL 122204, at *3-4 (Tenn. Ct. App. Jan. 25, 2000) (No Tenn. R. App. P. 11 application filed). However, we have also held that a 57% - 43% split was substantially equal, *Monroe v. Robinson*, No. M2001-02218-COA-R3-CV, 2003 WL 132463, at *4 (Tenn. Ct. App. Jan. 16, 2003) (No Tenn. R. App. P. 11 application filed). We have even found a 65% - 35% split to be substantially equal. *Woolman v. Woolman*, No. M2000-02346-COA-R3-CV, 2001 WL 1660714, at *5 (Tenn. Ct. App. Dec. 28, 2001) (No Tenn. R. App. P. 11 application filed).

[9] While the terms of a custody or visitation order are not controlling, *Helton v. Helton*, 2004 WL 63478, at *7, they are relevant.

[10] The length of the comparison period has a direct and pronounced effect on determining whether parents' custodial time is substantially equal. Using a short period may produce a misleading comparison by exaggerating the difference in the amount of time parents are spending with their children. For example, if the comparison period is two weeks, a parent who spends seven of fourteen days with the child has spent 50% of the comparison period with the child. If the parent spends six days with the child, the portion of the comparison period is reduced to 42.9%, and if the parent spends five days with the child, the percentage is reduced to 35.7%.

The permanent parenting plan incorporated in the final divorce decree envisioned that Mr. Coode could spend 177 days per year with his children.[11] However, the dispute regarding Ms. Coode's decision to move to Knoxville arose less than six months following the entry of the divorce decree. Accordingly, the comparison period in this case must necessarily be less than one year. The trial court decided to analyze that period from January 18, 2002[12] through July 30, 2002.[13] We have determined that this period is appropriate.

Had Mr. Coode exercised all the residential time he was entitled to between January 18 and July 30, 2002, he would have spent 43.5% of the time with the children. However, he did not exercise at least twenty days of residential time during this period, and thus he actually spent no more than 33.2% of the comparison period with the children. There is no evidence that Ms. Coode interfered with Mr. Coode's visitation, and Mr. Coode presented no other exigent circumstances that prevented him from exercising his visitation. Accordingly, the only conclusion that can be drawn from the evidence is that Mr. Coode and Ms. Coode were not spending substantially equal amounts of time with their children between January 18 and July 30, 2002. Accordingly, we affirm the trial court's decision to analyze Ms. Coode's contemplated move to Knoxville using Tenn. Code Ann. § 36-6-108(d).

Mr. Coode characterizes this mode of analysis as "bean counting" and asserts that it is inconsistent with the policies of cooperation and flexibility that undergird the recently enacted parenting plan procedures. We do not consider Tenn. Code Ann. § 36-6-108 to be incompatible with Tenn. Code Ann. §§ 36-6-401, -414 (2001 & Supp. 2003) as long as the courts consider the reasons for a parent's failure to exercise the residential time they have been provided.

## IV.
### THE APPLICATION OF TENN. CODE ANN. § 36-6-108(d)

As a final matter, we have determined that the trial court properly applied Tenn. Code Ann. § 36-6-108(d)'s standards to the evidence in this case. Ms. Coode has a reasonable purpose for moving because the job in Knoxville offers an opportunity for career advancement as well as a substantial increase in compensation. While two of the children desire to remain in Clarksville, the record contains no evidence that moving to Knoxville will "pose a threat of specific harm."[14]

---

[11] On an annualized basis, Mr. Coode would have spent 48.5% of the time with the children, and Ms. Coode would have spent 51.5%.

[12] The date of the entry of the divorce decree.

[13] The date of the first hearing on Mr. Coode's petition to prevent Ms. Coode from moving to Knoxville with the children.

[14] Moving is the sort of "specific harm" contemplated by Tenn. Code Ann. § 36-6-108(d)(2). Moving is a fact of life for many children, those with married parents as well as those whose parents are divorced. Allowing Ms. Coode to move with the children will require them to adapt to a new school and new friends. However, the record shows that these children are bright and well-adjusted, and this adaptation does not constitute a threat of specific and serious harm.

Finally, the record does not demonstrate or suggest that Ms. Coode was being vindictive when she decided to move to Knoxville.

While our decision to affirm the trial court favors Ms. Coode, it should not be construed as reflecting in any way on the parenting skills of either Ms. Coode or Mr. Coode. Nothing in this record suggests that the children are safer, happier, or healthier with one parent than with the other. Both Mr. Coode and Ms. Coode are good parents. However, because Ms. Coode is the parent who spends substantially more time with the children, Tenn. Code Ann. § 36-6-108(d) requires the courts to permit her to move with the children when her employment opportunities require it.

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to James B. Coode, III for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., J.