IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2011 Session

IN RE HAVEN T.

Appeal from the Juvenile Court for Hamilton County
No. 237,806     Suzanne Bailey, Judge

No. E2010-01902-COA-R3-JV-FILED-JANUARY 31, 2012

Haven T. is the daughter of Clint T. ("Father") and Jennifer G. ("Mother"). The parties were never married. Father initiated the present litigation by filing a petition for custody after Mother notified him she would be moving from Chattanooga to Johnson City to attend college. At the hearing that followed, the parties stipulated that this was the "initial" custody determination for Haven although the juvenile court had entered an order in 2003 adopting a "parenting plan" that, by agreement, gave the parties equal time with Haven. The court awarded custody to Father. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Curtis L. Bowe, III, Chattanooga, Tennessee, for the appellant, Jennifer G.

Leslie B. McWilliams, Chattanooga, Tennessee, for the appellee, Clint T.

**OPINION**

I.

A.

Haven T. was born on October 18, 2001. The parties lived at Father's residence for a few months after Haven was born. By all accounts Haven is a gifted and delightful child. The proof reflects that both parents love Haven and both are good to her. The parents have worked together in Haven's best interest to raise her despite a personal dislike for each other.

Their cooperation has included accommodations of each other's schedule, including both personal and family plans.

Mother moved out of Father's residence in early 2002 and moved back in with her mother, Haven's grandmother. She left her mother's residence in 2005 when she married Mr. G. About a year later, she divorced Mr. G. and moved into her own apartment in Ooltewah. In July 2009, Mother moved to a new location in Chattanooga so Haven could attend Normal Park Elementary. Normal Park offers special programs for gifted children such as Haven.

In 2006, Father started living with a woman named Stacy at his home in Ringgold, Georgia. They married on February 20, 2010. It is undisputed that Stacy has a good relationship with Haven and with Mother. The two adults often talk by telephone, and they occasionally have lunch together.

In May 2010, Mother sent Father a letter stating that she was moving with Haven to Johnson City so she could attend East Tennessee State University ("ETSU") to finish her undergraduate degree. Her anticipated graduation date is May 2013. On May 13, 2010, Father filed a pro se petition for custody of Haven.

The only litigation between the parties concerning Haven prior to the present case was pursuant to a petition Mother filed on or about May 19, 2003, asking "the [juvenile] court to set specific dates and times for visitation" by Father. After the petition was filed, the parties met in mediation and agreed on a schedule that gave them equal time with Haven. The juvenile court approved the schedule in an order dated July 14, 2003, that "sustained' Mother's petition and "adopted the agreement [of the parties] as [the] Order of [the] Court, *except as to custody provisions*." (Emphasis added.)

There is very little dispute in the proof that, after the 2003 order, the parties kept Haven on a rotating schedule that gave each parent five days one week and two days the next week. However, Father and his wife, Haven's stepmother, testified that, beginning sometime in 2006, Haven was with them approximately 20 days out of the month until Father filed his petition, at which time Mother started reverting to the court-ordered visitation schedule more exactly. Father testified that he had always attended karate classes with Haven and that he often kept Haven after Tuesday classes until the visitation rotated to him, even on the weeks Mother was to have the child. He also testified that, when Mother moved back in with her mother, she began asking him to keep Haven more, and sometimes take her to school. Mother admitted Father's involvement with Haven in karate, but disagreed with the proportion of time as described by Father. Mother testified that when she had to work during her time with Haven, her mother kept the child.

The hearing concluded on July 28, 2010 – before Mother was to depart for Johnson City. Mother stipulated that this was the "initial" custody determination as to Haven, and argued that the proper analysis for the court was one of comparative fitness. Father agreed and argued that even if this were not an initial custody determination, he spent as much or more time with Haven than Mother and was entitled to challenge the relocation.

The proof showed that Haven has lived all her life in or near Chattanooga. Haven's maternal grandmother lives in Chattanooga. Mother has used the grandmother as a resource throughout Haven's life. The grandmother has routinely kept Haven when she was not with Father, and when Mother's work or school schedule has required it. Father's extended family lives near his home, and Father testified that he and Haven spend time with his family. Father testified that if he has custody of Haven, she will attend Battlefield Elementary School, which is within minutes of Father's home. He testified that, if he is given custody, there will be no more changes in school systems.

B.

The court announced it decision from the bench:

> I've look at the statutes, and I've listened to your argument
> . . . . I think that, regardless of how we classify this case, I have
> to look at the same factors. Both [Tenn. Code Ann. §] 36-6-106
> [(2010)] and [Tenn. Code Ann. §] 36-6-108(c) [(2010)] require
> that I look at basically the same factors. I think we agree on
> that.
>
> And . . . I can make a finding that the parties have spent
> essentially equal time with the child since 2003. I do think,
> from the proof, that dad has spent a little more time with the
> child.
>
> I can't make this initial [determination] in a vacuum. I have to
> look at what the circumstances are going to be for this child.
> And very soon, Mom, you're going to be going to ETSU, so
> you're going to be going up to Johnson City and starting you
> life, you know, possibly as soon as next week, at the very latest,
> the end of August. So I have to look at the circumstances that
> are coming around the bend for this child. . . .

* * *

I think both parents have had this child quite substantially equal periods of time, and dad may have had the child a little more, but – so I've got to look at these factors in 36-6-106.

I find factors three, four and six controlling in this case. I think both of you love this child. You have strong emotional ties and affection for this child. You both have a good disposition to provide for the child. I think factor three is the importance of continuity in the child's life. Who's going to be able to provide more stability for this child. Who's going to allow her to stay closest to the life that she's known.

Four would require me to look at the stability of the parties, and I do think that that factor weighs heavily in favor of dad.

And the home, school and community record of the child, I think that both of you have tried to create a stable home for her and you've tried to allow her to participate in the community, but I do think a move is, of course, going to change that. And there will be villages wherever she goes, but I have to look at which village she's been in and which village I think is going to be more appropriate for her at this time in her life. So I am going to make dad the custodian of this child.

Mom, your schedule, as you testified today, I think that you would be able to spend more time with Haven if the child remains here and goes to school, as opposed to dad coming up to Johnson City and spending time with her there. So dad's going to be declared the custodian of the child. . . .

The court approved Father's proposed "Parenting Schedule." It gives the parents joint decision-making authority and sets a standard holiday and vacation schedule. Father has physical custody and Mother has visitation every other weekend from 7:00 p.m. Thursday to 7:00 p.m. Sunday.

II.

Mother filed this appeal. The issues raised by her, stated verbatim, are:

-4-

Whether the juvenile court erred by failing to dismiss Father's petition for failure to plead a cause of action under which relief could be granted including changing custody but failing to find that father spent substantially more time with the minor child.

Whether the juvenile court erred by failing to, or incorrectly applying the comparative fitness standard to determine a primary residential parent when a parenting schedule had previously been entered.

Whether the juvenile court erred by failing to, or incorrectly, applying the Tennessee relocation statute.

(Capitalization and underlining in original omitted.) Father has filed a motion asking us to hold that this is a frivolous appeal and to award damages against Mother.

### III.

Our review of the trial court's factual determinations in this non-jury case is de novo, with a presumption of correctness as to the trial court's findings of fact. Tenn. R. App. P. 13(d). Factual findings will not be reversed unless they are against the preponderance of the evidence. *Morrison v. Allen*, 338 S.W.3d 417, 425 (Tenn. 2011). We review the trial court's legal conclusions de novo, with no presumption of correctness. *Id*. at 426.

### IV.

Mother's argument concerning the first issue is that Father's petition fails to state a claim upon which relief could be granted; therefore, it should be dismissed. Her contention seems to be that the petition only alleges relocation of Mother and that relocation cannot, as a matter of law, constitute a material change in circumstances. We reject Mother's argument for numerous reasons. First, the petition contains a full paragraph of facts which describe the anticipated adverse impact on Haven from Mother's move. It states that, before the proposed relocation, Haven was with Father 21 to 23 days out of any given month. The relocation will obviously change the time Haven has with Father. The petition states that, since Mother's move is temporary, the relocation to Johnson City will not be the last time the child is uprooted. The petition alleges a loss to Haven of the benefit of extended family. It also alleges a loss of insurance eligibility through Father. "It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). Just the opposite happened

in this case; Father proved facts in support of all his allegations that persuaded the trial court to grant him relief.

Mother relies upon *Shannon v. Shannon*, No. E2002-00518-COA-R3-CV, 2002 WL 31421666 (Tenn. Ct. App. E.S., filed Oct. 29, 2002), for the proposition that relocation cannot, as a matter of law, constitute a material change in circumstances upon which to base a change in custody. *Shannon* does not stand for such a broad proposition. In *Shannon* we were reviewing a trial court's order that changed custody from a mother to a father based upon the mother's numerous moves to declining neighborhoods. *Id*. at *1. We recognized, first, that a change in custody must be based on a material change in circumstances and that the "change cannot be one that was known or reasonably anticipated when the [previous] order was entered." *Id*. at *2. Second and third, respectively, we considered whether the number of moves, four, or the locations to which the mother moved, supported the change. *Id*. at *3-4. We held that, based upon the evidence presented in that case, neither the number of moves nor the location of the moves was shown to be a material change that justified the change in custody. *Id*. at *5. We *did not* hold that relocation could never constitute a material change in circumstances. Had we been convinced that relocation could never, as a matter of law, constitute a change of circumstances, our analysis of the evidence on that issue would have been unnecessary. There are no hard and fast rules for what will or will not constitute a change in circumstances. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Generally, it can be any unanticipated change that happens after the entry of an order of custody provided the change "affects the child's well-being in a meaningful way." *Id*. Although we do not believe that proof of a material change in circumstances was necessary in this case, for reasons that we will hereinafter discuss, we believe Father proved that Mother's relocation with Haven would have adversely affected her well-being in a meaningful way. The trial court, in fact, noted that even if the issue in this case had been a material change in circumstances, the court would have found such a change.

Finally, Mother's argument is completely inconsistent with her argument to the trial court that the case should be tried as an initial custody determination and decided based upon the comparative fitness of the parents. The court questioned counsel for both parties and they both agreed that was the way the case should be tried. The court correctly treated their agreement as a stipulation, with which the court expressed its own agreement. Given the stipulation, Father was only required to allege and "to establish by a preponderance of the evidence that designating him as the primary residential parent after applying the comparative fitness test was in the child's best interest." *In re D.A.J.*, No. M2004-02421-COA-R3-JV, 2005 WL 3369189, at *5 (Tenn. Ct. App. E.S., filed Dec. 9, 2005). "This Court has held that if a custody dispute arises between parents over a child born out of wedlock the comparative fitness test is the proper standard to be applied, where there has been no previous custody decree." *Id*. *But see*, *id*. at *5 n.3 ("We note that in *In re*

***B.A.L. and A.E.L***, No. W2004-00826-COA-R3-JV, 2004 WL 3008810 (Tenn. Ct. App. Dec. 23, 2004), *no appl. perm appeal filed*, the Western Section of this Court seems to suggest that a mother's having custody by virtue of Tenn. Code Ann. § 36-2-303 is sufficient to require that a material change in circumstances first be proven in any future change of custody proceedings."). In ***Schmalhofer v. Schmalhofer***, No. W2002-01540-COA-R3-CV, 2003 WL 22718271 at *7 (Tenn. Ct. App. W.S., filed Nov. 17, 2003), we held that, in the context of an initial custody determination in a divorce action, the mother's pending relocation to England and the adverse effect on the continuity and stability of the child were factors that tipped the scales in favor of the father even though both parents were fit and able parents.

Mother does not argue that the trial court misapplied the factors listed in Tenn. Code Ann. § 36-6-106[1] – only that it should not have reached those factors without first finding a

---

[1]Tenn. Code Ann. § 36-6-106 (2010) states, in pertinent part:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. The court shall consider all relevant factors, including the following, where applicable:
>
> (1) The love, affection and emotional ties existing between the parents or caregivers and the child;
>
> (2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;
>
> (4) The stability of the family unit of the parents or caregivers;
>
> (5) The mental and physical health of the parents or caregivers;
>
> (6) The home, school and community record of the child;

(continued...)

material change in circumstances and that relocation cannot be the basis of such a finding. We have rejected that position for the reasons previously stated. Accordingly, we will not undertake to articulate our application of the individual factors to the facts as found by the trial court. It is sufficient for the purposes of this case to state that we have reviewed the record in its entirety and hold that the evidence does not preponderate against the trial court's finding that it is in the best interest of Haven that custody be with Father. Further, we conclude that the trial court focused on the factors important to this case.

---

[1](...continued)

> (7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
>
> (B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
>
> (10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

The statute has been amended since the hearing as reflected in the 2011 supplement, but the amendment is not at issue in this appeal. We have quoted the version in effect when the case was tried and decided.

Mother's argument on the second issue is a rehash of parts of her argument on the first issue and a sort of preview of her argument on the third issue. Accordingly, we will move directly to the third issue.

Mother argues that the trial court incorrectly applied, or simply failed to apply, Tenn. Code Ann. §36-3-108,[2] which controls relocation of a child. Her argument on this point is

[2] Tenn. Code Ann. § 36-6-108 (2010) is a lengthy statute. The trial court specifically found that the parents spend substantially equal time with Haven. Therefore we will focus on subsection c of the statute. It states:

> (c) If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The extent to which visitation rights have been allowed and exercised;
>
> (2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
>
> (3) The love, affection and emotional ties existing between the parents and child;
>
> (4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>
> (6) The stability of the family unit of the parents;
>
> (7) The mental and physical health of the parents;
>
> (8) The home, school and community record of the child;
>
> (9)(A) The reasonable preference of the child if twelve (12) years of age or older;
>
> (B) The court may hear the preference of a younger child upon request. The

(continued...)

not a model of clarity. The substance seems to be based upon two propositions, both of which we reject. The first proposition, closely tied to Mother's theory that relocation can never be a ground for a change in custody, appears to be that custody can never be changed in the context of a relocation dispute. We think Mother's argument is inconsistent with the reality that parents will sometimes move, with or without their child. In such a situation, when the parents are spending substantially the same amount of time with their child, "[t]he court shall determine whether or not to permit relocation of the child based upon the best interests of the child." *Id*. It is important to note that Mother in the present case was set on moving to Johnson City, with or without Haven. There is nothing wrong with that decision and there is nothing questionable about her reason for moving. However, there is no denying an impact on Haven. Thus, the trial court was faced with making a decision whether to allow the move with Haven, despite its impact on Haven, or, without court involvement, "allowing" the move without Haven. Based on the pleadings and proof before the court, we think it was incumbent on the trial court to address the issue of custody rather than simply order Mother not to move with Haven and leave the issue of custody unresolved when it is abundantly clear that Father's petition put this issue "front and center" as the saying goes.

There is nothing in our holding inconsistent with *Caudill v. Foley*, 21 S.W.3d 203 (Tenn. Ct. App. 1999) which is included in Mother's list of cases. *Caudill* did not involve an "initial" custody determination; there had been a previous order establishing custody of the child. *Id*. at 205. Further, the relocating parent in *Caudill* was the parent that spent the majority of time with the child. *Id*. at 212.

The second part of Mother's argument seems to be that the trial court committed reversible error in not making a "specific finding of fact as to each factor upon which it rested its decision." We disagree with Mother's premise. In the course of announcing its decision, the court treated the factors of "continuity," "stability," and "home, school and community" listed, respectively, at Tenn. Code Ann. § 36-6-106 (a)(3),(4) and (6) as "controlling." The court discussed some, but not all of the other factors, clearly implying that

---

[2](...continued)

> preferences of older children should normally be given greater weight than those of younger children;
>
> (10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
>
> (11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

they did not weigh in favor of or against either of these commendable parents. The "relocation" statute, specifically, Tenn. Code Ann. § 36-6-108(c), list numerous factors which run parallel to those in § 36-6-106, including:

> (5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>
> (6) The stability of the family unit of the parents; [and]
>
>    \*    \*    \*
>
> (8) The home, school and community record of the child.

The court clearly stated in an order entered after the hearing that its ruling was in the best interest of Haven. Mother fails to set forth any authority for the proposition that the court was bound to list and discuss each and every factor of both Tenn. Code Ann. § 36-6-106 and 36-6-108, including those that it did not find particularly relevant or weighty for either party. Thus, we fail to see the rationale of Mother's argument. It does not persuade us to disturb our original conclusion that the trial court considered the appropriate factors and that the evidence does not preponderate against the judgment of the trial court.

## V.

Father has filed a motion asking that we find Mother's appeal to be frivolous and order her to pay damages to him for defending the appeal. Pursuant to Tenn. Code Ann. § 27-1-122 (2000), we "may" award "just damages" to a party who defends a frivolous appeal. Not every argument made by Mother is beyond reasonable debate so as to render the appeal completely devoid of merit. Accordingly, we deny Father's motion.

## VI.

The judgment of the juvenile court is affirmed. Costs on appeal are taxed to the appellant, Jennifer G. Father's motion for damages for frivolous appeal is denied. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed at the trial court level.

_____
CHARLES D. SUSANO, JR., JUDGE

-11-