# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 10, 2009 Session

## ELIZABETH LEANNE HUDSON v. LARSON DOUGLAS HUDSON

**Appeal from the Eighth Circuit Court for Davidson County**
**No. 06D-533  Carol Soloman, Judge**

---

**No. M2008-01143-COA-R3-CV - Filed November 3, 2009**

---

This case involves an appeal concerning the relocation of Elizabeth Leanne Hudson ("Mother") and her two minor children from Nashville, Tennessee, to Hopkinsville, Kentucky. Larson Douglas Hudson ("Father") opposed the relocation. After a three day bench trial, the trial court granted Mother's request to relocate after finding, pursuant to Tenn. Code Ann. § 36-6-108, that the relocation was reasonable and not vindictive. The trial court also awarded Mother attorney's fees. For the following reasons, we affirm the holding of the trial court regarding the relocation but reverse concerning the attorney's fees.[1]

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
#### Affirmed in Part, Reversed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. joined. D. MICHAEL SWINEY, J. filed a dissenting opinion.

Helen S. Rogers and Lawrence J. Kamm, Nashville, Tennessee, for the Appellant, Larson Douglas Hudson.

Phillip Robinson and Philip E. Smith, Nashville, Tennessee, for the Appellee, Elizabeth Leanne Hudson.

---

[1] Our first opinion in this case originally was filed on September 29, 2009. Father thereafter filed a petition to rehear. The petition to rehear contained a meritorious assertion. Accordingly, we granted the petition, withdrew our original Opinion, and now submit this substitute opinion. The dissenting opinion is also withdrawn, and a new dissenting opinion will be submitted.

# OPINION

## I.
## Factual Background

*The Divorce Settlement*

Mother and Father were divorced on January 29, 2007, on the grounds of irreconcilable differences. The parties have two minor children, Sara (d.o.b. 9/15/99) and Emily (d.o.b. 4/24/2001) ("children"). Per the custody agreement, Father saw the children five out of every fourteen days, four of which he had 24-hour custody. He had custody every other Wednesday evening and every other Wednesday evening through Sunday.

Per a mediated divorce settlement, Mother received $38,400 in child support per year; the $600,000 home (not yet fully paid for); $1,033,686 in proceeds from the recent sale of Father's company, Hearing Planet, Inc. ("Company"); alimony in the amount of $130,268; and $3000 for a country club membership. Father agreed to pay around $33,000 per year for the children to attend a prestigious private school in Nashville. Mother also was to receive half of any "earn-out" payments ("earn-outs") – additional payments contingent on the post-sale performance of the Company.

The earn-out agreement set aside a potential $8,000,000 that would be paid out to several Company executives over a three-year period based upon the attainment of specified goals. The earn-outs were used by the buyer ("Buyer") of the Company as an incentive to keep the experienced Father on as CEO for at least three years. However, the earn-outs were not guaranteed because the performance criteria were designed to become more difficult to achieve each year. In fact, the company barely met the criteria the first year; the standard was met only after Father forfeited his $108,000 yearly bonus in return for the more lucrative earn-out. As a result, Mother received an additional $625,000 in earn-outs for the fiscal year April 1, 2006 - March 31, 2007.

The divorce was contentious; the acrimony between Father and Mother continued after the divorce and eventually spilled over into the relocation dispute. For instance, on June 4, 2007, Father filed a Petition for Contempt against Mother for failing to remove his name from the mortgage as required under a previous agreement. Father also complained that Mother interfered with his custody time on one occasion and impeded his ability to contact the children by phone. Additionally, Father alleged, without any concrete proof, that Mother was having overnight male guests while the children were present. On August 13, 2007, Father amended the Petition for Contempt to include a charge that Mother failed to pay for the expenses for the copying of certain video tapes.

2

As a result of Father's Petition for Contempt, Mother payed off the mortgage by borrowing against $300,000 of her investment portfolio. Subsequently, Father voluntarily withdrew his Petition for Contempt. Thus, as a result of the divorce, Mother owned the house free and clear and still had a net worth of approximately $1,570,000, not including the $300,000 debt. If invested conservatively, it was estimated that she would receive at least $50,000 per year in interest. Added to the $38,400 she receives for child support, Mother will make around $90,000 per year without working.

*Father's resignation and the Petition to Relocate*

Around the end of the first earn-out period, March 2007, Father resigned from the Company, although he remained employed there in a limited capacity until June 30, 2007. Father did not immediately disclose his resignation to Mother. Father insisted the reason he did not immediately tell her was fear of her reaction because his resignation foreclosed any possibility of further earn-outs. Instead, Mother found out about the resignation from other sources sometime in April. On April 25, 2007, Mother called Father to confirm the resignation. That same day, she called her attorneys and began discussing relocation plans.

On June 21, 2007 - about four and a half months after the divorce was finalized - Mother filed a Petition to Relocate ("Petition"). The Petition contained the following reasons for the relocation:

1. Mother can no longer afford to stay in her home at 3600 Bowlingate Lane, Nashville, Tennessee, and has been forced to place this property for sale.
2. Mother must secure employment, and needs a flexible work schedule not available to her in the vicinity of Nashville, Tennessee.
3. The cost of living in Hopkinsville, Kentucky, is less than the cost of living in Nashville, Tennessee.
4. In Hopkinsville, Kentucky, Mother will have family members as an additional support system that is not available to her in Nashville, Tennessee.
5. Mother feels there is such hostility toward her in the community where she and the children reside that it is advisable for her and the children to relocate.

Father opposed the relocation and submitted Interrogatories and Document Requests on August 6, 2007, concerning the Petition. On September 5, 2007, Mother filed a Motion for a Protective Order based on what she considered to be inappropriate Interrogatory and Document Requests. The trial court granted the Motion on October 4, 2007, and, as a result, Father was only given access to Mother's sworn financial statement.

During a deposition on March 6, 2008, Father produced an email that purported to contradict some of Mother's deposition testimony regarding the quality of her relationship with her mother. Father obtained the email by accessing Mother's email account without her knowledge. He had

3

previously set up the account, and Mother had failed to reset the password after the divorce. On March 17, 2008, the trial court granted Mother a Restraining Order against Father from accessing any of Mother's electronic communications. The Order also prevented Father from using the email at trial. This court declined to hear Father's interlocutory appeal on the matter.

*Trial Proceedings*

The relocation trial was held on April 14 - 15, 2008. The trial court spent an inordinate amount of time hearing testimony regarding Father's resignation from the Company, despite its tangential relationship to the reasons for relocation stated in the Petition. In short, Father insisted his departure was purely a business decision based on his dissatisfaction with Buyer. Although at trial he admitted that he used the divorce as the excuse to end the business relationship, he alleged that he only did so to avoid "burning bridges" with Buyer. In other words, Father thought it was better to tell Buyer that he was leaving to get a "fresh start" as a result of the divorce rather than tell Buyer he was leaving because of Buyer's behavior. Mother, on the other hand, contended Father left the business only to ensure that she would not receive any more earn-outs.

Mother testified that she is a trained nurse. Although she did not work full-time during the marriage, she would work one shift every quarter in order to keep her license current. She received these quarterly appointments through a temporary health care staffing agency named "All About Staffing." Mother admitted that she did not start looking for a job in Hopkinsville until after she filed the Petition. She found a job in Hopkinsville as a "Home Health Nurse" that had very flexible hours, allowing her to only work during the hours when the children were in school. Significantly, Mother admits that she did not look for any nursing jobs in Nashville. When questioned about why she did not look in Nashville, she responded that, based on her previous experience as a nurse in Nashville, she would not be able to find a job that met her hourly requirements.

Father responded to Mother's testimony by calling two expert witnesses, both of whom claimed that a nurse with Mother's skills could have almost certainly found a job in Nashville to fit her needs. Edwina Temple, the Human Resources Director for "All About Staffing," testified there was a "very high probability" of finding shifts for Mother on the days when the children were in Father's custody. Michelle Jarrett, a regional manager for a nursing staffing company in Nashville, testified that Mother's preferred hours from 8:00 a.m. to 2:00 p.m. existed in doctor's offices, clinics, home health, hospice, and outpatient surgery centers, and that such jobs would pay more than their counterparts in Hopkinsville. She also claimed that these jobs would offer Mother career advancement, while the job in Hopkinsville would not.

Both the trial and previous deposition testimony of Mother's mother, Wanda Wade, established that the mother, grandmother, aunt, and uncle live in Hopkinsville. Although not raised at trial, Father points out in his brief that Ms. Wade stated in her deposition that she did not plan on "being a baby sitter" for the children. Ms.Wade also is the primary caretaker of the grandmother, who has dementia. Ms. Wade also noted in her deposition that the aunt and uncle provide little help with the grandmother because of their busy jobs.

4

As a result of the divorce, Mother had to re-apply to the local country club where she and her husband had been members. Mother's application was tabled by the application committee, and the trial court heard testimony from Father about his involvement in the decision. Although Father admitted to being friends with those on the committee, he claimed he had nothing to do with their decision. Additionally, on the advice of counsel, Father refused to write a letter supporting Mother's admission, as he did not want to become involved in the situation. However, Father admitted that he knew that membership in the country club was important to Mother and that it was embarrassing for her to be denied admission. Father did eventually write a short note in support of Mother's membership, although the trial court found it to be "too little, too late."

In addition to the country club incident, Mother testified that she "didn't feel comfortable" in the subdivision where she lived because of her neighbor's activities. Mother claimed a neighbor told Father that one of the children kept pulling the "For Sale" sign out of the yard. One of the neighbors also told Father about a strange car parked outside of Mother's house overnight. That information was used as a basis for Father's assertion in the Petition for Contempt that Mother was having male over-night guests. Father admitted that he formerly jogged with one of Mother's neighbors who occasionally provided unsolicited gossip about Mother. However, Father contended that he would not perpetuate such conversations.

The trial court also heard testimony concerning the communication problems between Father and Mother during the period following the divorce. For instance, Father complained that he and his parents had been treated rudely by Mother at a birthday party for one of the children. On the other hand, Mother complained about Father's request for separate parent-teacher conferences. During the divorce trial, Dr. David McMillan, Father's therapist, testified that Father understood that his hyper-controlling nature was a significant reason why the marriage failed. Additionally, Dr. McMillan opined that part of the problem post-divorce was that Mother and Father were maintaining *too much* contact. In other words, neither party was doing particularly well at transitioning from the status of marriage to divorce. Dr. McMillan also testified that Father was making good progress in changing his controlling behavior and that Father loved his children very much.

The trial court heard extensive testimony about the differences between the children's Nashville school, the Ensworth School ("Ensworth"), and the Hopkinsville school, University Heights Academy ("UHA"). Although both schools are private, it is undisputed that UHA is much smaller and has significantly fewer resources than Ensworth. For example, at UHA, Spanish is the only foreign language offered and it is only taught three days a week; there is no musical instrument instruction; and the starting salary for teachers is only $21,000 per year. Meanwhile, Ensworth is nationally accredited offering several foreign languages and a first class library. At trial, Father offered the testimony of Dr. Susan Smartt, who works at the National Comprehensive Center for Teacher Quality at Vanderbilt University. Dr. Smartt testified that Ensworth was an "exemplary school when it comes to independent schools, not only in Nashville but in the Southeast. . . ." She also opined that removing the children from Ensworth was a "dramatic decision" that would make a "big difference" in their lives.

5

*The Trial Court's Rulings*

The trial court held that there was a reasonable purpose for Mother's relocation based on 1) Father's premature resignation from the Company, 2) Mother's difficulty in gaining membership in the country club, 3) Father's improper and controlling behavior towards Mother, 4) the existence of support from her extended family, and 5) the relative closeness of Hopkinsville to Nashville. Specifically, the trial court's Opinion and Order stated that:

- There is a legitimate purpose for wife to move home to her family where she can work and have some assistance with the childcare, coupled with Father's behavior and his desire to control everyone and everything;
- There is nothing negative about the move to Hopkinsville except that the children will not get to see their Father quite as much as they do now;
- The lower cost of living in Hopkinsville will assist Mother with her loss of income by Father's quitting his employment and allows Mother freedom from the harassment and daily intrusion of the Father.

Furthermore, the trial court held that Mother's purpose for moving to Hopkinsville was not vindictive. The court found that the relocation would be in the best interest of the children, even though the relocation statute does not require such a finding once it is found that the relocation has a reasonable purpose, does not threaten the children, and is not vindictive. Additionally, Mother was granted attorney fees. Father filed a timely appeal.

# II.
## Issues for Review

1. Did the trial court err in finding that Mother's relocation from Nashville, Tennessee, to Hopkinsville, Kentucky, served a reasonable purpose?

2. Did the trial court err in not finding that Mother sought relocation for a vindictive purpose?

3. Did the trial court err in finding that relocation was in the children's best interest.

4. Did the trial court err in granting attorney's fees to Mother.

6

# III.
## Standard of Review and the Relocation Statute

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact of the trial court are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). Where the trial court does not make findings of fact, there is no presumption of correctness and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of the credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B&G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The relocation statute, Tenn. Code Ann. § 36-6-108 (Supp. 2008), governs this action. The statute creates a mechanism for determining whether a parent who has custody of a child may relocate outside the state or more than 100 miles from the other parent within Tennessee. Because Father concedes that he does not spend substantially equal time with the children, Tenn. Code Ann. § 36-6-108(d)(1) applies in this action. The Code provides:

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> (A) The relocation does not have a reasonable purpose;
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

*Id.*

Tenn. Code Ann. § 36-6-108(e) goes on to state that, "[i]f the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child."

Although the statute does not provide a definition of "reasonable purpose," it does define "specific and serious harm." Tenn. Code Ann. § 36-6-108(d)(2). As such, the parties agree that while subsection (A) and (C) are in issue, subsection (B) is not.

7

Father also argues that Mother's relocation was done for a vindictive purpose. "A parent's motive for relocating is vindictive if it is intended to defeat or deter the visitation rights of the other parent." *See* Tenn. Code Ann. §36-6-108(d)(1)(C); *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

The party opposing the relocation - in this case Father - bears the burden of proving unreasonableness or vindictiveness. *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App. M.S., Dec. 30, 2003).

# IV.
## Discussion

**Contentions of the Parties**

*Trial Court Errors*

Father emphatically asserts that the trial court made numerous errors during trial and in its Opinion and Order.

First, Father argues that the trial court incorrectly focused on whether Father quit his job to ensure that Mother would not receive any more earn-outs. Father asserts that even if Father quit his job in bad faith (which he claims he did not), it has nothing to do with the relocation issue; instead, it is a breach of contract issue regarding the marital dissolution agreement that should be litigated in another forum.

Second, Father takes issue with the trial court's finding that he was responsible for the Mother's rejection at the country club. The record, according to Father, contains no proof that Father did anything other than take his lawyer's advice to remain neutral.

Third, Father argues that the trial court put too much emphasis on Father's alleged behavior towards Mother, when in fact none of the grounds listed in the Petition concern Father's interactions with Mother.

As an example of the above contentions, Father focuses on findings from the trial court like "the lower cost of living in Hopkinsville will assist Mother with her loss of income by Father's quitting his employment and allows Mother freedom from the harassment and daily intrusion of the Father." Father argues that Mother had no "loss of income" because the earn-out payments were not guaranteed in the first place; if Mother had wanted more guaranteed income she should have bargained for it during the divorce proceedings. Father also reiterates that Mother's Petition contains no grounds regarding the purported "harassment and daily intrusions of Father."

*Reasonable Purpose*

Father argues that the facts in the record, when applied to the reasons stated in the Petition, preponderate against the trial court's finding that the Mother's relocation serves a reasonable purpose. Father points out that Mother's assertion that she could no longer afford to stay in her home is factually incorrect; even if she was to pay off the house completely, she would still have a net worth of at least $1.3 million.

Father also takes issue with Mother's contention that she needs to move for employment reasons. First, Father notes that Mother does not have to work at all since her combined alimony and investments should yield around $90,000 per year. Second, Father points out Mother made no attempt to find work in Nashville. Furthermore, the testimony at trial shows that she could have found a better paying job with flexible hours and opportunities for career advancement in Nashville. Father argues that while this court has consistently held that an increase in salary or career advancement can be a factual predicate to constitute a reasonable purpose for relocation, the same cannot be said when similar employment is available without relocation. Father supports this contention by analogizing to *Robinson v. Robinson*, No. M2003-022089-COA-R3-CV, 2005 WL 1541861, at *7 (Tenn. Ct. App. M.S., June 30, 2005), where the court held there was no reasonable purpose for relocating to attend a school when an equivalent education was available without relocation.

Father contends that Mother's cost of living argument is contrary to established case law. Father cites to *Slayton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *3 (Tenn. Ct. App. M.S., Oct. 24, 2005), for the proposition that cost of living does not by itself constitute a reasonable purpose, but is instead only a factor that must be taken into consideration along with other economic components. For instance, this Court has taken cost of living into consideration where relocation would have resulted in a only a slight increase in pay. *See, e.g., Roberts v. Roberts*, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *6. (Tenn. Ct. App. E.S., Oct. 31, 2005). However, Father notes he was unable to find any cases where a decrease in cost of living that offset a decrease in pay was found to be a reasonable purpose. Thus, Father argues that Mother has no other economic factors to couple with the lower cost of living that would turn "cost of living" into a reasonable purpose.

Mother, on the other hand, states that if she stays in Nashville, she would have to invade the principal of her assets to continue to enjoy the same standard of living that she had during the marriage. Father points out in his reply brief that Mother is not entitled to the same standard of living at this stage; that was a matter for the previous divorce mediation and is completely separate from the relocation question.

Regarding the presence of Mother's family members in Hopkinsville, Father argues that, contrary to Mother's contention, relocation will cause a net loss of support for the children. Father questions the effectiveness of a support system that consists of a grandmother who has dementia, a mother who is busy caring for the grandmother, and an aunt and uncle who are so busy they provide

little help in caring for the grandmother. Father also suggests that, based on the deposition testimony of Ms. Wade that she will not be a "baby sitter," the strength of Mother's relationship with her mother is questionable.[2] Father then points out that, before the relocation, Father had provided a support system which has now been significantly diminished due to the move.

Father also cites to *Rogers v. Rogers*, No. W2006-00858-COA-R3-CV, 2007 WL 1946617, at *11 (Tenn. Ct. App. W.S., July 3, 2007), in which this court upheld the trial court's finding that the custodial mother's relocation from Memphis to South Carolina was not reasonable where the only reason for the move was to be with her extended family. In that case, the mother, who lived in Memphis, had extended family who also lived there. The members of the extended family were in the early stages of planning to move to Spartanburg, South Carolina, and the mother wished to accompany them. *Id.* at *3. Because of the distance of the move and the speculative nature of whether the extended family would even follow through with their plan to move, the trial court found the mother's relocation request to be unreasonable. *Id.* at *11. In reaching our conclusion, this court noted that "the desire of a primary residential parent to move to be near his or her extended family can form the basis for a reasonable purpose, particularly when this reason is augmented by additional considerations." *Id.*

Mother responds that Father mis-characterizes the Mother's relationship with her mother. Furthermore, Mother testified that she thought the Hopkinsville community was "tight knit" and that it would provide a safe, supportive environment for the children. Mother notes that this court and the Tennessee Supreme Court have on several occasions held that non-economic reasons can form the basis of a reasonable purpose for relocation. *See, e.g., Caudill,* 21 S.W.3d at 212 (holding that having "many friends and relatives" in the relocation area constitutes a reasonable purpose for relocation). In response to Father's reliance on *Rogers*, Mother argues that the trial court considered Father's inappropriate behavior towards Mother to augment Mother's desire to be closer to her family.

Regarding Mother's final reason for relocation, Father disagrees with Mother's contention that the community is so hostile that it is advisable for her and the children to relocate. Father argues that the incidences Mother complains of hardly rise to the level of hostility; instead, they are simply social consequences of divorce. Father then cites to *O'Bannon v. O'Bannon*, No. E2002-02553-COA-R3-CV, 2003 WL 22734673, at *8 (Tenn. Ct. App. E.S., Nov. 20, 2003) which notes, *inter alia*, that a parent's desire to move to escape the social consequences of a divorce does not constitute a reasonable purpose. Mother contends that Father is downplaying the embarrassment that the country club incident and neighborhood gossip has caused her.

*Vindictiveness*

Father contends that Mother wished to move for a vindictive purpose. While Father admits

---

[2]Father also makes this assertion based on the email he took from Mother's email account without her knowledge or permission. The trial court refused to consider this evidence, and we agree with the trial court's reasoning. Thus, we refuse to credit the information contained in this email.

there is no overt admission of vindictiveness in the record, Father argues the "totality of the circumstances" reveals Mother's bad faith motives. For instance, Father notes the suspicious timing of Mother's decision to relocate. Father also argues that Mother's stated purposes for moving are so unreasonable that her real motivation must be revenge.

Mother responds by asserting that the new parenting schedule she proposed had substantially the same amount of visitation time as the old schedule. Thus, she was not defeating the visitation rights of Father. Since, per *Caudill*, relocation is vindictive only if it is intended to defeat or deter the visitation rights of the other parent, Mother argues she was not being vindictive as a matter of law. Mother contends that the trial court's rejection of Mother's proposed schedule is immaterial; Father, on the other hand, replies that Mother knew her proposed schedule would be rejected and that she only presented it to satisfy *Caudill's* requirements.

Mother also argues that the trial judge credited Mother's testimony that she had no vindictive purpose, and that this court must give deference to those findings.

*Best Interest of the Children*

Father contends that it was error for the trial court to make the best interest finding because once a reasonable purpose is established, the statute demands a halt to any further inquiry. Father also is emphatic that the relocation could not possibly be in the best interests of the children because:

-                   the children grew up in Nashville;
-                   they have immediate access to both parents in Nashville;
-                   they go to a superior school in Nashville; and
-                   they will now have to spend three hours on the road every other weekend when visiting Father.

*Attorney's Fees*

Father contends that the trial court never made a finding of the reasonableness of the attorney fees, nor did it give Father an opportunity to question them. Mother's brief was silent on this issue.

# V.
## Analysis

*Reasonable purpose*

Although this court affirms the ultimate conclusion of the trial court, we nevertheless find merit in several of Father's arguments. We concur that the motivations regarding Father's resignation are largely immaterial to the relocation case. Per the marital dissolution agreement, the earn-out payments were never guaranteed. Furthermore, the evidence strongly suggests that even if Father had stayed on, the Company likely would not have met the earn-out thresholds during the second and third

year. Thus, it is inappropriate to conclude that Mother "lost income" because of Father's resignation. Although the timing of the resignation and the events surrounding it do tangentially touch upon the strained relationship of Mother and Father, we do not think that the issue warranted the depth of inquiry that was given to it.

We also agree with Father that the economic reasons for relocation presented by Mother are insufficient. It is undisputed that Mother never looked for employment in Nashville. This fact alone is fatal to Mother's contention that she could only find suitable employment in Hopkinsville. Because of this, Father is correct in his assertion that there are no other economic factors to couple with the lower cost of living to constitute a "reasonable purpose."

We also concur with Father that the country club incident and the neighborhood gossip are social consequences of divorce that do not rise to the level of a "hostile environment," especially considering their temporal proximity to the actual divorce. The country club incident certainly disappointed Mother, and the neighborhood gossip may have made her uncomfortable. However, per *O'Bannon*, those incidences alone cannot be considered a reasonable basis for relocation.

Despite our agreement with Father on the above issues, we must nevertheless conclude that the trial court was correct in its ultimate decision to allow the relocation based upon familial support in Hopkinsville. As Mother correctly points out, *Caudill* announces that the presence of family members in another town can be a reasonable purpose for relocation. Furthermore, we find Father's reliance on *Rogers* to be misplaced. The relocation in that case is easily distinguishable from the one at bar. In *Rogers*, the mother was attempting to move from Memphis to South Carolina based on the speculative plans of her extended family members. In this case, Mother is only moving about sixty 60 miles to be near her Mother and other relatives who have lived in Hopkinsville for some time.

It is also important to keep in mind that Tenn. Code Ann. § 36-6-108 is only applied when a custodial parent relocates outside the state or 100 miles from the other parent within Tennessee. Thus, had Mother moved the same 60 mile distance in-state, the statute would not even be applicable. While this court is certainly not implying that any move out-of-state is reasonable if it is less than 100 miles, the relatively close distance between Nashville and Hopkinsville must be taken into consideration. The trial court found that the short distance between the two cities militated towards the reasonableness of the relocation, and we agree.

Father complains that it was improper for the trial court to put so much emphasis on his controlling nature and poor behavior towards Mother because such a ground was not contained in the original Petition. We agree that, in the absence of such a ground in the Petition, those interactions by themselves do not constitute a reasonable purpose for relocation. However, we find that those past interactions have had a direct bearing on the amount of support Mother believes she could receive from Father in Nashville. Although Father makes a compelling case that the relocation will in fact cause a net loss of support because of Father's absence, it is clear from Father's argument that he is thinking in terms of pure logistical support. At the same time, the "support" Mother refers to undoubtably has an emotional component. While we applaud Father's recent efforts to see a therapist

12

to change his controlling behavior, his past interactions with Mother have clearly created an atmosphere of hostility and distrust between the parties that cannot be undone in the short term. Thus, it is not surprising that Mother believes the emotional support she would receive in Hopkinsville would be greater than any support Father could provide in Nashville. Furthermore, the trial court credited Mother's testimony that she believed she would receive more support in Hopkinsville, and this court must give "great weight" to that determination. In short, we do not believe the record preponderates against the trial court's finding that "it is reasonable for Mother to relocate to Hopkinsville, where Mother will have family members as an additional support system that is not available to her in Nashville."

*Vindictiveness*

We find that the record does not preponderate against the trial court's findings that Mother's relocation was not vindictive. The trial court heard Mother testify that the purpose of the relocation was not vindictive and it found her testimony credible. Although Mother's timing concerning Father's resignation and her decision to relocate is slightly suspicious, it is not enough to give rise to an inference of vindictiveness or preponderate against the trial court's findings. Furthermore, we find Father's contention that Mother's proposed parenting plan was nothing more than a ruse to circumscribe *Caudill* is a stretch at best and completely without merit at worst.

*Best Interest of the Children*

Tenn. Code Ann. § 36-6-108(d)(1) is clear that if a relocation has a reasonable purpose, does not threaten the child, and is not vindictive, then the parent ***shall*** be allowed to move. Having determined that Mother has satisfied all three of these requirements, there is no reason for this court to make a best interest inquiry because it will not affect the outcome of this appeal.

*Attorney's Fees*

Father contends that the trial court abused its discretion by awarding attorney's fees to Mother. Father argues that Mother has substantial assets to pay her legal fees, and the trial court did not afford him an opportunity to be heard on this issue.

Tenn. Code Ann. § 36-6-108(i) provides the trial court with the discretion to award attorney's fees in relocation cases. It permits either parent to "recover reasonable attorney fees and other litigation expenses from the other parent[.]" *Id.* Pursuant to the statute, we review this issue raised on appeal for abuse of discretion. *Id.*

Discussing the abuse of discretion standard in *Eldridge v. Eldridge*, the Tennessee Supreme Court stated that an appellate court should not disturb a trial court's ruling when "reasonable minds can disagree as to [the] propriety of the decision made." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001). The *Eldridge* court further explained:

> A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Id.* (citations omitted).

Thus, a trial court's discretionary decision ordinarily will stand as long as reasonable judicial minds can differ regarding its soundness. *Overstreet v. Shoney's Inc.,* 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). As a result, when we review a trial court's discretionary decision, we "begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.*

In this case, we find that the trial court abused its discretion in its award of attorney's fees to Mother. While it is within the trial court's discretion to award attorney's fees, it appears unreasonable, unfair, and against logic in this case based upon the totality of the circumstances. Mother has the financial means to pay her own attorney's fees. When awarding attorney's fees to Mother, the trial court did not take into account Mother's financial position. Mother has a net worth that totals in excess of one million dollars coupled with her investment earnings and wages from her new job in Hopkinsville, Kentucky, all of which provides Mother with the means to afford the legal fees associated with a matter she initiated.

Although Mother presented sufficient proof to justify the relocation petition, the proof also reveals that the relocation favored Mother's interests more than the children's interests. For example, the Petition to Relocate states the following:

> (1) Mother can no longer afford to reside in the marital residence . . . .
>
> (2) Mother has located employment in the State of Kentucky that offered her work with the greater flexibility she needs . . . .
>
> (3) Mother will have her family close by as additional support system.
>
> (4) [Mother] feels that there is such hostility toward her in the community where she and her children resided that it is advisable for her . . . to relocate.

Additionally, it appears from this court's review of the record that the trial court's order directing Father to pay Mother's attorney's fees is punitive. There are numerous references expressing disapproval of Father's conduct and actions throughout the proceedings. The trial court's Opinion and Order contained the following remarks:

> (1) [Father] had a severe issue with the need to be in control . . . .

14

(2)  Father told the Mother, you can kiss your country club goodbye . . . .

(3)  Referring to Father's note to the country club, "this was too little, too late."

(4)  He is the source of conflict in this situation.

(5)  Living in Hopkinsville will assist Mother with her loss of income by Father's quitting his employment and allow the Mother freedom from harassment and daily intrusion of Father  . . . .

Instead of focusing on Mother's relocation and its purpose, the trial court persisted in making irrelevant observations about Father's conduct and actions. We found nothing in the record to support awarding attorney's fees to Mother in light of her financial means. Further, the relocation favored Mother's interests more than the children's interests, and it seems that the trial court's disapproval of Father influenced its decision to award attorney's fees.

As a result, this court finds that the award of attorney's fees in this case is unreasonable, unfair, and against logic. We further find that it causes an injustice to Father based upon the totality of the circumstances, and therefore, it is an abuse of the trial court's discretion to make such an award. We thus reverse the trial court's award of attorney's fees to Mother.

# VI.
## Conclusion

For the reasons discussed above, we affirm the trial court's ruling allowing Mother to relocate from Nashville, Tennessee, to Hopkinsville, Kentucky, in that this relocation serves a reasonable purpose and is not for a vindictive purpose. We reverse the trial court's award of attorney's fees based upon an abuse of discretion. Therefore, the judgment of the trial court is affirmed in part and reversed in part. Costs on appeal are taxed equally to both parties. The case is remanded to the trial court for payment of costs below.

_____
JOHN W. McCLARTY, JUDGE

15