IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

**IN RE JONATHAN S.**

**Appeal from the Juvenile Court for Davidson County**
**No. 2009-2850, PT-208361        Sheila Calloway, Judge**

_____

**No. M2018-02072-COA-R3-JV**
_____

This is the second appeal of a case involving a father's petition to modify the parties' parenting plan, wherein he requested that he be named the primary residential parent. At the close of father's proof during the initial trial, mother moved for a directed verdict. Finding that father's evidence was insufficient to establish a material change in circumstances, the trial court granted mother's motion and dismissed father's petition. Father then appealed to this Court. We concluded that father did present sufficient evidence to establish a material change. Accordingly, we reversed the judgment of the trial court and remanded the case so that mother could present her evidence. Following the entry of this Court's decision—but prior to the remand trial on father's first petition— father filed a second petition to modify the parenting plan, raising new allegations. The parties agreed to consolidate the two matters and further agreed to a bifurcated trial in which the remand trial on father's first petition would be conducted first, followed by a trial on father's second petition. Additionally, the parties agreed to a timeframe regarding the presentation of evidence, whereby mother, during the remand trial on father's first petition, would be limited to evidence that arose prior to the date of the initial trial; all evidence arising after that date would be covered in the trial on father's second petition. Ultimately, the trial court found that father proved a material change in circumstances and that it was in the best interest of the child that he be named the primary residential parent. Consequently, the trial court mooted father's second petition. Mother appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed
and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Karla C. Miller and Rachel S. Upshaw, Nashville, Tennessee, for the appellant, Elizabeth S.

Tarsila Crawford and James Widrig, Nashville Tennessee, for the appellee, Jonathan S.

Laura A. Stewart, Nashville, Tennessee, Guardian Ad Litem for J.E.S., Jr.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This is the second appeal of a case between Elizabeth S. ("Mother") and Jonathan S. ("Father"), the unwed parents of J.E.S. (the "Child"),[1] in which Father sought to modify the agreed order and permanent parenting plan entered into on June 2, 2014, which had designated Mother as the primary residential parent (the "2014 Order and Parenting Plan"). The Child was born in February 2009, but Mother and Father's relationship had ended several months prior. At the time the Davidson County Juvenile Court (the "trial court") had entered the 2014 Order and Parenting Plan, Mother lived in Nashville, Tennessee with her then-husband, and Father lived in Michigan.[2]

In late June 2015, Father came to Tennessee to pick up the Child in order to exercise his summer parenting time. While in Michigan, Father, on July 2, 2015, filed a petition in the trial court to designate him as the primary residential parent as well as an *ex parte* restraining order to suspend Mother's parenting time (the "First Petition"). According to the First Petition, Mother had lost her home and job, separated from her husband,[3] and moved in with her mother, the Child's maternal grandmother ("the Grandmother"). Mother, however, was kicked out of the Grandmother's home following a physical altercation between the two of them that occurred on June 6, 2015 and from which Mother was arrested and charged with assault and domestic violence. Thereafter, Mother and the Child moved into a friend's home, renting out two bedrooms and a bathroom. Following a hearing on Father's petition for an *ex parte* restraining order on July 29, 2015, the trial court ruled that Mother would remain the primary residential parent in accordance with the 2014 Order and Parenting Plan, pending a hearing on Father's petition to modify the parenting plan. Accordingly, the Child returned to Mother's custody in Tennessee at the end of the 2015 summer. After a hearing on Father's First Petition, the trial court, on September 15, 2015, entered an order, adopting Father's proposed parenting plan and designating him as the primary residential parent (the "2015 Order and Parenting Plan"). As a result, the Child moved back to Michigan with Father in September 2015 and enrolled in school there.

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identities.

[2] Because Father lived in Michigan and Mother lived in Tennessee, Father was to exercise his parenting time in the summer from June 6th until July 6th, as well as most of the holidays.

[3] Mother testified that she and her husband separated after she discovered that he was married to three other women at the same time, with whom he had five or six children, all of whom he had abandoned.

Mother timely filed a request for a rehearing before the trial court as well as a stay of the 2015 Order and Parenting Plan. The rehearing was held on April 28 and 29, 2016, and, at the close of Father's proof, Mother's counsel made an oral motion for directed verdict. In support of the motion, she argued that Father had failed to present evidence that a material change in circumstances had occurred after the entry of the 2014 Order and Parenting Plan. In response, Father's counsel, as well as the Child's guardian ad litem, argued that Mother's instability—evidenced by her unsettled living arrangements, her altercation with the Grandmother, and her subsequent arrest—constituted a material change in circumstances sufficient to support a modification of the Child's primary residential parent. On May 31, 2016, the trial court entered its order and granted Mother's motion for a directed verdict (the "2016 Order"), noting that while there was "no question that the Mother had a very difficult four month period of time[,]" there was not enough to support a finding of a material change in circumstances. Additionally, the trial court directed the parties to operate pursuant to the 2014 Order and Parenting Plan after the Child finished the 2015-2016 school year in Michigan with Father.[4] Father then appealed the 2016 Order to this Court.

On July 24, 2017, we reversed the trial court's decision and remanded the case back to the trial court with instructions. *See In re Jonathan S.*, No. M2016-01365-COA-R3-JV, 2017 WL 3149600, at *7 (Tenn. Ct. App. July 24, 2017) (hereinafter "*In re Jonathan I*"). Specifically, after citing to Father's proof at trial, we concluded as follows:

> Compared to the apparent stability in Mother's life when the initial permanent parenting plan was entered, it is not a stretch to say that the changes that occurred in Mother's life in 2015 were significant. Faced with that evidence, however, the trial court found only that Mother "had a very difficult four month period of time." The problem with the trial court's assessment, in our view, is that it infers a subsequent improvement in Mother's stability that is not reflected in the record. While a fleeting period of hardship may not rise to the level of a material change in circumstance, it is difficult to make that determination without evidence that the period of hardship is, in fact, fleeting.

*Id.* at *6. Accordingly, we reversed the trial court's dismissal of the First Petition and remanded the case so that Mother could present her evidence. *Id.* at *7.

After this Court issued its opinion, Father, on August 31, 2017, filed a separate petition to modify the permanent parenting plan (the "Second Petition"), in which he offered additional evidence that a material change in circumstances had occurred since

---

[4] Accordingly, the Child moved back to La Vergne, Tennessee to live with Mother on July 6, 2016.

the April 2016 rehearing and Father's appeal.[5] At the request of both parties, the trial court, on November 21, 2017, entered an order consolidating the two matters.[6] Additionally, the order provided that the Child would return to Father in Michigan at the completion of his school's winter break in Tennessee.[7] After a hearing, the trial court, on April 6, 2018, entered an order on the remand trial on Father's First Petition, wherein it found that there had been a material change in circumstances and that it was in the Child's best interest to primarily reside with Father in Michigan (the "2018 Order and Parenting Plan"). With regard to Father's Second Petition, the trial court entered a separate order on May 9, 2018, dismissing it as moot "since there was a favorable ruling on behalf of the Father in the first Petition[.]" After the entry of the 2018 Order and Parenting Plan, both Father and Mother filed various post-trial motions in order to correct and clarify finer points in the final order. Following a resolution of these post-trial motions by the trial court, this second appeal followed.

## ISSUES PRESENTED

As we perceive it, Mother raises four issues on appeal, which we rephrase as follows:

1. Whether the trial court erred in finding a material change in circumstances such as to warrant a change of custody.
2. Whether the trial court erred in finding a change of custody was in the Child's best interest.
3. Whether the trial court abused its discretion in failing to consider all evidence through the date of the trial on April 4, 2018.
4. Whether Mother should be awarded her attorney's fees and costs incurred on appeal.

Father raises no separate issues of his own but seeks his attorney's fees and costs on appeal.

## STANDARD OF REVIEW

In *Armbrister v. Armbrister,* the Tennessee Supreme Court set out the standards that apply to appellate review of a trial court's resolution of a petition to modify an existing permanent parenting plan:

---

[5] Father alleged new facts including Mother's failure to cooperate at visitation exchanges—which resulted in Mother being found in contempt of court—issues with the Child's medical treatment, and issues regarding Mother placing more importance on the Child's playing football than his visiting with Father.

[6] As such, it was agreed that the trial court would conduct a hearing on the remand of Father's First Petition first, followed by a hearing on Father's Second Petition.

[7] The Child returned to Father's custody in December 2017.

- 4 -

In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

A trial court's determinations of whether a material change in circumstance has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d at 732; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

### DISCUSSION

### I. Modification of the Parenting Plan

When a parent files a petition to modify custody, the parent seeking the modification must demonstrate "that a material change in circumstance has occurred which makes a change in custody in the child's best interests." *Kendrick*, 90 S.W.3d at 570. Thus, the decision to modify custody is a two-part test. As a threshold issue, the trial court must determine, by a preponderance of the evidence, whether there has been a material change in circumstances since the initial custody determination. *See In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005). If the court finds that a material change in circumstances has occurred, the court must proceed to the second step of the analysis to determine whether the modification sought is in the child's best interest. *Id.* If the court finds that a material change in circumstances has not occurred, it "is not required to make a best interests determination and must deny the request for a change of custody." *Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008) (quoting *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)).

### A. Material Change in Circumstances

In *Blair v. Badenhope*, the Tennessee Supreme Court noted the following in determining whether a material change in circumstances has occurred:

"[T]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody." Nevertheless, the following factors have formed a sound basis to determine whether such a change has occurred: the change has occurred after the entry of the order sought to be modified and the change is not one that was known or reasonably anticipated when the order was entered, and the change is one that affects the child's well-being in a meaningful way.

*Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002) (quoting *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998) (citations omitted)).

Here, in the 2018 Order and Parenting Plan, the trial court found that, "[b]ased on all of the evidence presented, even though Mother's difficulties occurred during a brief period of time, it does rise to the level of a material change of circumstance." As noted by the trial court, the record reflects that Mother separated from her then-husband in February 2015 after she discovered that he had been living a double-life. Then, in March 2015, the ranch where Mother had been living and working for over three years was sold. Having lost her husband, her job, and her home in a short period of time, Mother then moved into the Grandmother's home with the Child in order "to get back on [her] feet." However, this living arrangement ended abruptly following a physical altercation between Mother and the Grandmother on June 6, 2015, as a result of which Mother was arrested and charged with assault and domestic violence. After Mother was released from custody the following day, she and the Child then moved in with a friend of hers, from whom she rented out two rooms and a bathroom. Later that same month, Father picked up the Child in order to exercise his summer parenting time, after which Mother took significant steps to move to Texas.[8] Mother, however, never completed the move to Texas and, on January 9, 2016, moved into a two-bedroom home in La Vergne, Tennessee in order to take care of her friend's mother who suffered from stage 3 emphysema. Around the same time, Mother started working for Ritchie Bros. Auctioneers. On March 1, 2016, her friend's mother was transferred to hospice care, after which Mother allowed another friend and her three children to move into the home.[9] These changes in Mother's living situations occurred after the entry of the 2014 Order and Parenting Plan and were not known or reasonably anticipated when the order was

---

[8] Mother classified the move as a "vacation" to visit her family. The trial court, however, noting that she had signed a lease on an apartment and had found a part-time job, stated that Mother "definitely made enough steps to follow up on that arrangement." Moreover, on September 10, 2015, Mother sent Father a relocation letter stating her intent to move to Texas with the Child in November 2015.

[9] According to Mother, this friend contacted her and informed her that she was in a "very unsafe" situation with her own mother. Mother testified as follows: "I completely understood where she was and without hesitation I said come on, and I said we're going to be stacked on top of each other, but you need to be safe, we'll figure it out. So she came with her three girls."

entered. Moreover, this evidence indicates that Mother's period of instability was not merely "temporary," as questioned by this Court in *In re Jonathan I*. On the contrary, the record indicates that Mother's living and employment situations remained unstable until a few months before the April 2016 rehearing. Accordingly, the evidence supports the trial court's conclusion that such period rose to the level of a material change in circumstances.

### B. Best Interests

If the court finds a material change in circumstances, it must then determine whether a modification of the parenting plan is in the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 705. In conducting a best interest analysis, Tennessee Code Annotated section 36-6-106(a) sets forth a non-exclusive list of fifteen factors to be considered, to the extent relevant. Determining a child's best interest is a fact-intensive inquiry, and, depending upon the significance of certain facts, a single factor can control the outcome of this determination. *See Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445, at *5 (Tenn. Ct. App. Jan. 9, 2018). Here, after finding that a material change in circumstances had occurred, the trial court addressed all fifteen factors and found that "[a]ll of the difficulties Mother experienced did affect the best interest of the child." Mother, however, argues on appeal that the trial court erred in its application of these factors, noting specifically that, out of the fifteen, the trial court found that two favored Mother and Father each, and that the remaining eleven were either neutral or not applicable. We address Mother's concerns below.

As to Mother's contention that the trial court erred in finding that the best interests of the Child had been affected because the section 36-6-106(a) factors weigh equally in favor of both her and Father, we note that this is an improper application of the law. This Court faced a similar argument in *Woolbright v. Woolbright*. There, the father argued that the residential parenting schedule ordered by the court was illogical and inconsistent with the best interests of the child because the majority of the factors set forth in section 36-6-106(a) clearly weighed in his favor. *Woolbright v. Woolbright*, No. M2016-02420-COA-R3-CV, 2018 WL 934815, at *7 (Tenn. Ct. App. Feb. 16, 2018). We, however, noted that "[e]ven if a majority of the factors did weigh clearly in favor of Father, that would not necessarily mean that the trial court abused its discretion by awarding an equal amount of parenting time to each parent." *Id*. Further, as this Court has stated, determining a child's best interest does not call for a "rote examination" of each of the relevant factors and then a determination of whether the sum of the factors tips in favor of or against the parent. *See In re Marr,* 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005).[10] Accordingly, while "the sum of the factors" tipped in neither Mother's nor Father's favor,

---

[10] Stated differently, this Court has also noted that "child custody litigation is not a sporting event that can be determined by simply tallying up wins and losses." *Paschedag v. Paschedag*, No. M2016-00864-COA-R3-CV, 2017 WL 2365014, at *4 (Tenn. Ct. App. May 31, 2017).

such a result is unnecessary to support the trial court's conclusion that a modification of the parenting plan is in the Child's best interest.

Moreover, the trial court found that "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment" favored Father. As this Court has stated:

> [C]ourts faced with a request for modification of the designation of a child's primary residential parent emphasize the importance of continuity in the child's life, and so are normally disinclined to change the original designation. This is based on the premise that children tend to thrive in a stable environment.

*S.A.M.D. v. J.P.D.*, No. W2011-01256-COA-R3-CV, 2012 WL 5266194, at *18 (Tenn. Ct. App. Oct. 25, 2012). However, as described above, the Child's environment while living with Mother—especially from February 2015 until June 2015—was unstable, the effects of which are reflected in the record. For example, Father testified during the April 2016 rehearing that when he picked up the Child in June 2015 in order to exercise his summer parenting time, Mother admitted to him that the recent changes in their lives had started to affect the Child. Specifically, Father testified as follows:

> [Mother] says that through all the things that [the Child] has been through in his life has started to affect him negatively and he's starting to develop behavioral – behavioral problems.
>
> And she says during that conversation, it's starting to affect him behaviorally with boundary issues and just – she talked about having a very hyper, over – hyperactive child, and she's noticed that he's starting to have behavioral issues based upon what he's gone through in this life.

Mother's own testimony during the remand on Father's First Petition echoed the same, during which she described the period from February 2015 to June 2015 as one that she and the Child had "survived." Mother's and Father's testimonies are reflected in the Child's report card for the 2014-2015 school year. The report card contains a section titled "Student Responsibilities for Behavior," which itself contains six categories: following school rules; demonstrating self-control; accepting responsibility for actions; respecting the rights and property of others; respecting authority; and interacting well with peers. The report card indicates that the Child needed to improve in two of those categories in the first quarter of the 2014-2015 school year, one in the second, two in the third, and three in the fourth.[11] Notably, the Child's behavioral issues peaked during the last quarter of the 2014-2015 school year—the same period of time in which Mother was

---

[11] Specifically, the three categories in which the Child needed to improve during the fourth quarter were following school rules, accepting responsibility for his actions, and respecting authority.

experiencing the period of instability recounted above. However, the record reflects that the Child's behavioral problems began to improve after he had moved to Michigan with Father following the entry of the 2015 Order and Parenting Plan. Father testified during the April 2016 rehearing that, when the Child first came to live with him, "he had lots of anxiety and hyperactivity" and that he would talk excessively and interrupt class while at school. Again, Father's testimony is reflected in the Child's report card for the 2015-2016 school year. Initially, the report card indicated needs for improvement in listening to and following multi-step directions, respecting adults and peers, and practicing self-control. However, by the third quarter, the report card indicates that the Child's evaluation in these categories had improved to "[p]rogressing as expected[.]" The trial court further found that Child's improvement could be attributed in part to the fact that Father enrolled him in weekly play therapy sessions.

Accordingly, based on the foregoing, we conclude that the evidence does not preponderate against the trial court's finding that Mother's period of instability constituted a material change in circumstances and that a modification of the parenting plan was in the Child's best interest.

## II. Trial Court's Limitation on the Evidence Presented

Mother also argues on appeal that the trial court limited her ability to present proof of her circumstances "from and after April of 2016[,]" meaning the time period following the rehearing on Father's First Petition. According to Mother, "the record reflects quite a bit of confusion over exactly what time period of evidence the Court was to consider on remand as opposed to the Father's Second Petition[.]" Father and the Child's guardian ad litem, however, suggest that there was no such confusion and that all parties and the trial court had agreed and "interpreted the remand from the Court of Appeals to mean that Mother's evidence should be presented *as they then existed* at the original date of the trial." (emphasis in original). Accordingly, we find it necessary to determine whether the record reflects that such an agreement between the parties existed.

After the entry of the 2018 Order and Parenting Plan, both Father and Mother filed various post-trial motions in order to correct and clarify finer points in the final order. On May 5, 2018, Father filed a motion for relief under Tennessee Rules of Civil Procedure 59 and 60 ("Father's First Motion for Relief") "to correct certain mistakes and conflicting rulings . . . that result in logistical issues surrounding Mother's parenting time[.]" On May 17, 2018, Mother, pursuant to Rules 59.02, 59.04, 59.06, and 60.02 of the Tennessee Rules of Civil Procedure, filed a motion for a new trial or, in the alternative, to alter or amend the judgment. A hearing on these two motions was held on September 19, 2018, during which Father's counsel made the following comments:

> We were before this Court several times on pre-trial motions where it was discussed about the time period limitation, and everybody understood that and agreed to that.
>
> There was, what I would call, an open objection every time Mother tried to talk about or her counsel tried to elicit information. Beyond the 2016 date, we would object. We had a standing objection to that. If some of that information came into the record, it was by mistake, because Mother kept talking about things that were not part of that time period.
>
> . . . .
>
> And, No. 2, all parties and all lawyers agreed on several occasions on the record before the Court that the time period would be stipulated to the initial filing of Father's petition in 2015 until the 2016 April trial.

Mother's counsel replied as follows:

> All I can say on that, Your Honor, is – I obviously was not counsel during the trial.
>
> What I can say is, I've looked at every order in this case, every pleading in this case. I have not seen an order that states that the time period was limited only through April 2016.

The trial court then, on October 15, 2018, entered an order on Mother's and Father's motions, correcting the conflicts in the 2018 Order and Parenting Plan brought to light by Father and denying all aspects of Mother's motion. Additionally, in response to the comments made by Father's and Mother's counsels regarding the timeframe for the presentation of proof, the trial court found the following:

> The Court finds that there was an agreement of the parties based on the decision by the appellate court as to what this Court was to do on the remand, and that was exactly what was done by this Court *according to the agreement of the parties*. The Court finds that there was an agreement of all the parties, at that time, as to their expectations of what was to be presented at the remand trial. The Court finds that the remand trial hearing was held fairly for all sides and a decision was made based on the evidence that was presented at that time.

(emphasis added).

On October 19, 2018, Father filed another motion for relief under Tennessee Rules of Civil Procedure 59 and 60 ("Father's Second Motion for Relief"), requesting that the

trial court further clarify and correct the 2018 Order and Parenting Plan. In the motion, Father stated that "it is apparent that Mother will appeal to the Court of Appeals this matter so Father believes the record should be clear for the appellate court." What Father wished to make clear for this Court—and which had not yet been included in any prior order entered by the trial court—was that the agreement regarding the timeframe for the presentation of proof was discussed not just during the remand trial on Father's First Petition, but also during an October 17, 2017 hearing prior to the remand trial:

> The Father would show that everyone was aware, based on the pre-trial October 17, 2017 hearing, of what was to be presented on April 4, 2018 to finish the original trial and the Father would show that during the trial on April 4, 2018 the Father continuously objected to what time period was relevant for this remand petition as certain facts were not applicable, or relevant, for the [First Petition] but were applicable, or relevant, in Father's Second Petition[.]

The trial court agreed with Father and, on January 22, 2019, entered an order on Father's Second Motion for Relief,[12] finding in relevant part as follows:

> It is relevant that the Court remembers that there was a discussion about the timeframe, and there was an agreement that it should be limited to a certain period of time, and the court finds that it would not have per se been important to include in an order because it is not something that the court would normally include in the findings of fact section of the order because it is not really a fact. It maybe should have been included in the procedural history section of the order but the Court did not anticipate that an attorney would no longer be on the case and that a later argument would be for the order to be vacated, and as such because of where we are in this case it should be included in an order. At the time of the initial remand trial, there was an understanding by all participants that were in the courtroom (Mother, Mother's counsel, Father, Father's counsel, and the Guardian Ad Litem), and an expressed understanding to the Judge, *that this portion of the hearing would only include the time frame as if the trial had never ended, meaning April 2016. There was a specific understanding by all parties, at the time, that any proof for the time period from April 29, 2016 to present would be included with the trial on Father's Second Petition to Modify*, which was filed on August 31, 2017. Even though the two Petitions were consolidated as to be heard on the same dates/dockets, they were not both heard. Father's Petition to Modify filed on August 31, 2017

---

[12] The Order also addressed Mother's Motion for Clarification of Child Support filed on October 11, 2018; however, such motion is not pertinent to this appeal.

- 11 -

was then dismissed by this Court as moot in light of the Court's ruling on the remand Petition.

(emphasis added)  Additionally, the trial court incorporated a transcript of the October 17, 2017 pre-trial hearing as part of its order, during which the following exchange took place:

> [Father's counsel]: [W]hat we have contemplated is to consolidate the remand, finish up mother's proof and then do proof of father's new petition with you, if you would do that, so you don't bounce around simultaneously.
> [Mother's counsel]: After the remand is heard.
> [Father's counsel]: But we need to do the remand—
> The Court: First.
> . . . .
> [Mother's counsel]: . . . . I know it's important that we address these [two petitions] in a timely manner, but I don't think that the remand here is going to take – and [Father's counsel] may have a different belief on this, I don't think the remand is going to take more than half a day.  And so to get the remand part of this hearing done, we would like to request that be sooner rather than later.  And if there is a subsequent – *because our testimony on the remand is going to be limited to that time frame*.  That's not going to address these new issues.

(emphasis added)  Accordingly, we agree with Father and conclude  that, prior to the remand trial on Father's First Petition, all parties had agreed that Mother's proof with regard to the remand trial would be limited to April 29, 2016—the date of the rehearing on Father's First Petition.  Indeed, Mother's counsel admitted during the October 17, 2017 pre-trial hearing that her proof "is going to be limited to that time frame." Significantly, Mother and her counsel entered into this agreement after Father had filed the Second Petition and with knowledge of the contents therein.

Further, while the technical record reflects that the parties had agreed to the above-referenced presentation of proof prior to the remand trial on Father's First Petition, the transcript from the remand hearing itself reflects that all parties were aware of and requested that the trial court enforce the same during the trial, as well.  Indeed, there are numerous instances in the transcript wherein Mother's counsel, following objections lodged by Father's counsel, observed the parties' agreement and continued on.  For example, at one point during the trial, Mother was shown photographs of the Child playing football that were taken in 2018; as Mother began to testify, Father's counsel objected:

> [Father's counsel]: Sorry, I have to interject again.  What year are we talking about, because we need to stay in 2016[.]
> The Court: 2014 to 2016.

- 12 -

[Father's counsel]: 2014 to 2016.
[Mother]: That's this year.
[Mother's counsel]: It is?
[Mother]: Yes, sir.
[Mother's counsel]: Okay.  All right.  Let's move onto the next one.

Mother's counsel then attempted to address allegations set forth in Father's Second Petition, to which Father's counsel also objected:

[Mother's counsel]: And you've been castigated a little bit for being neglectful and ignoring his head injuries –
[Father's counsel]: Objection.  That's not what we're talking about.
[Father's co-counsel]: That's the second petition.
[Mother's counsel]: Okay.

In another instance, Mother was asked about the Child's activities; when she began to discuss those in which the Child was involved during the 2018 year, Father's counsel objected:

[Father's co-counsel]: Your Honor, I just have to object.  Again, I think we're into doing activities now.
The Court: All right.  I know this is difficult.  When you're asking questions, maybe if you can just make sure it's between the period of time between 2014 and 2016.
[Mother's counsel]: Let's stay 2016 and prior.

In yet another instance, when Mother's counsel asked her to tell the trial court about the state of her depression diagnosis and treatment in 2018, Father's counsel objected:

[Father's counsel]: Time out, but we can't do current.  We have to do up until 2016.
The Court: True.
[Mother's counsel]: Okay.  All right.  What was your condition and diagnosis in 2016 and where were—
[Mother]: Yes, sir.  I'm just going to back up a little bit . . . .

Moreover, Mother's counsel even sought to have the agreement regarding the presentation of proof enforced:

[Father]: Throughout – and I have been involved in [Mother's] life for many – a long time, even, you know –
[Mother's counsel]: 2014 to 2016.
[Father]: And I can –
[Father's counsel]: Your Honor, this goes to the credibility of the witnesses that she presented.

[Mother's counsel]: Your Honor, we played that game with me. I was trying to get to credibility. I was trying to get to circumstance, and I was restricted to 2014 to 2016.
[Father's counsel]: You didn't argue credibility.
The Court: Sustained.
[Father]: May I answer the question?
The Court: No.
[Father's counsel]: No.

Accordingly, the above-quoted exchanges reflect that Mother and Father and their counsel were aware of and sought to—and did—enforce the agreement regarding the presentation of proof during the remand trial.

Mother, however, now argues on appeal that this agreement "eliminat[ed her] ability to present proof of her circumstance from and after April of 2016[,]" thus creating "a two-year period of time in which the Court considered no evidence pertaining to a material change of circumstance or to the child's best interests." Mother's counsel noted at oral argument—though failed to include citations to the relevant case law in her brief on appeal—that this Court oftentimes directs the trial court, on remand, to consider additional evidence to ensure that any custody order is based on the parties' current and actual circumstances. *See Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019) ("In the present case, upon remand, the trial court may, in its discretion, hear and consider additional evidence regarding the best interest of the child and the pertinent statutory factors."); *In re Carter K.*, No. M2017-01507-COA-R3-JV, 2018 WL 896060, at *6 (Tenn. Ct. App. Feb. 14, 2018) ("In light of the passage of time and events taking place in the lives at stake, the juvenile court may, in its discretion, consider additional evidence to ensure than any custody order is based on the parties' current actual circumstance."). While our previous decision in *In re Jonathan I* contained no such language, "the trial court has discretion as to whether new proof should be considered in the absence of an explicit appellate directive." *In re Grace N.*, No. M2016-00453-COA-R3-JV, 2017 WL 4402232, at *7 (Tenn. Ct. App. September 27, 2017) (citing *Thornton v. Massey*, No. W2013-01022-COA-R3-CV, 2014 WL 2472206, at *12 (Tenn. Ct. App. May 30, 2014) (noting that in the absence of a directive to reopen the proof or consider additional evidence on remand, the trial court's decision on whether to reopen the proof was discretionary)). Accordingly, inasmuch as we remanded this case "so that Mother may present her evidence[,]" *In re Jonathan I*, 2017 WL 3149600, at *7, the trial court possessed discretion to consider additional evidence, and, as this Court has stated, "[w]e will reverse such a decision only if the trial court applied an incorrect legal standard, based its decision on a clearly erroneous assessment of the evidence, or reached an illogical or unreasonable result." *In re Andrea R.*, No M2014-01895-COA-R3-JV, 2015 WL 7749116, at *6 (Tenn. Ct. App. Nov. 30, 2015) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010)).

After our review of the record, we have found no instances in the transcript from the remand trial on Father's First Petition—nor has Mother directed us to any—where she made any offer of proof as to the "proof of her circumstances from and after April of 2016." Mother argues that the agreement "eliminat[ed her] ability" to present such proof; however, while the trial court may have enforced the parties' agreement,[13] Mother maintained the ability to apprise the trial court as to the nature of the evidence it was excluding by making an offer of proof. As we have stated, this Court "is not required to grant relief to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error. In other words, we are not required to grant leave to a party who invited error." *Scot v. Scot*, No. M2018-00562-COA-R3-CV, 2019 WL 2323826, at *8 (Tenn. Ct. App. May, 31, 2019) (quoting *Glass v. SunTrust Bank*, 523 S.W.3d 61, 79 (Tenn. Ct. App. 2016)). Moreover, as we noted above, Mother and Father were both aware of and enforced the agreement regarding the presentation of proof. Not only are appellate courts "loath to place a trial court in error when the party complaining on appeal failed to take corrective action with respect to any error which allegedly occurred below," but "we are particularly loath to do so where the complaining party affirmatively acquiesced in the trial court's action." *Glass*, 523 S.W.3d at 79 (quoting *State v. Schiefelbein*, 230 S.W.3d 88, 117 (Tenn. Crim. App. 2007)). While we caution against parties entering into agreements regarding limitations on proof as to the best interests of a child or of trial courts approving such agreements, here, Mother nevertheless failed to make an offer of proof so as to preserve such evidence of her circumstances from and after April 2016. Accordingly, we conclude that the trial court did not apply an incorrect legal standard, did not base its decision on an erroneous assessment of the evidence, and did not reach an illogical or unreasonable result. Accordingly, we find no such abuse of discretion and thus affirm the judgment of the trial court.

### III. Attorney's Fees

Mother and Father both request this Court to award their respective attorney's fees incurred on appeal. Tennessee Code Annotated section 36-5-103(c) provides a right to recover attorney's fees in custody and child support disputes:

---

[13] Significantly, our review of the record supports Father's and the guardian ad litem's contention that Mother willingly entered into the agreement regarding the presentation of proof for strategic reasons. The record reflects that, on July 20, 2017, subsequent to the April 2016 rehearing on Father's first petition, the trial court found Mother guilty of four counts of criminal contempt. The grounds for contempt ranged from Mother's failure to exchange custody of the Child with Father on the dates set forth in the parenting plan to her failure to encourage a loving relationship with Father in the presence of the Child. By entering into the agreement that limited the evidence in the remand trial on Father's First Petition to April 2016, Mother kept the documentation and evidence regarding her criminal contempt out of the record of the remand trial.

A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). Thus, in considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. *See Darvarmanesh v. Gharacholou*, No. M2004-0262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005). In his brief on appeal, however, Father makes no argument concerning the grounds for his request, requesting only that "Mother should pay Father's attorney's fees as Father maintained stability for the child throughout this ordeal." As we have previously noted, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).[14] Accordingly, because Mother did not prevail on any of the issues she raised on appeal, and because we deem Father's request for attorney's fees as waived, we deny both Mother's and Father's requests for attorney's fees on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed and remanded for such further proceedings as are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[14] Further, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (citing *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011)).